# Richmond

## HOMER ALBERT v. COMMONWEALTH OF VIRGINIA.

October 14, 1943.

Record No. 2718.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*W. B. Snidow*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *Edwin B. Jones, Assistant Attorney General*, for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

The plaintiff-in-error has been convicted of involuntary manslaughter and sentenced to four years' confinement in the penitentiary. That sentence is now before us on a writ of error.

On the afternoon of July 27, 1942, William E. Johnson and his wife, Lydia, were walking eastward on a bridge in Giles county which spans New River and its immediate valley. That bridge is a thousand feet long and 23 feet wide. On either side of the bridge is a concrete wall or parapet about four feet high, and at its base is a curb about twelve inches high and eight inches wide. Just before the accident Mr. and Mrs. Johnson stopped on the right hand side of the bridge to watch some young people bathing. They then started across the bridge and were proceeding in an easterly direction in single file, the wife in front and both close to the curb, when they were struck by an oncoming truck driven by the defendant. Mr. Johnson, in an effort to escape, mounted the curb; some of his clothes were torn, and he fell from it but was not seriously hurt. Mrs. Johnson was hit and fatally hurt. She died in a short time thereafter. The point of the accident was 397 feet from the east end of the bridge.

For the Commonwealth the court gave this instruction:

"The court instructs the jury that involuntary manslaughter is the killing of one accidentally, in the commission of some unlawful act, not felonious, or in the unlawful performance of a lawful act."

To it this objection was interposed:

"The defendant objected to Instruction No. 1, and assigned as reasons for his objections that the instruction was an abstract statement or definition of involuntary manslaughter, which applied to a specific case, is misleading and confusing."

In Wharton's Criminal Law, Vol. 1, 12th Ed., section 427, involuntary manslaughter is thus defined:

"Involuntary manslaughter, according to the old writers, is where death results unintentionally, so far as the defendant is concerned, from an unlawful act on his part, not amounting to felony, or from a lawful act negligently performed. Hence it is involuntary manslaughter where the death of another occurs through the defendant's negligent use of dangerous agencies, * * * " citing many cases.

This in substance is the law on this subject as administered in Virginia:

"Involuntary manslaughter is the killing of one accidentally, contrary to the intention of the parties, in the prosecution of some unlawful, but not felonious, act; or in the improper performance of a lawful act. 1 East. P. C., ch. 12, sec. 1; 4 H. Comm. 192. See *Souther's Case*, 7 Gratt. (48 Va.) 673, 678; *Com*. v. *Jones*, 1 Leigh (28 Va.) 598, 610." *Mundy* v. *Commonwealth*, 144 Va. 609, 131 S. E. 242.

In the Mundy case, on this state of facts, the judgment was reversed by this court. Bertha Mundy was walking down the road with Napoleon West, who was leading his horse. He had proposed to her that they go into the woods and was undertaking to tie his horse to the fence. She was doubtful about his purpose and he said "if you don't believe I am going to tie this horse and do what I am, you take this gun and shoot me." He handed her a pistol, with the barrel pointing to himself, and as he did so, it went

off and he was killed. This court was of opinion that it was a simple accident, but we think it plain that the judgment of the trial court would have been sustained had it appeared that the accident occurred in the prosecution of some unlawful purpose or in the improper performance of a lawful one.

The two conditions which make for involuntary manslaughter might have been written into separate instructions or they might very properly have been embodied in one instruction, as they were. So written, they are neither confusing nor misleading.

If Albert was drunk when he drove this truck over Mrs. Johnson, we have an accident due to the commission of an unlawful act not felonious, for it is a misdemeanor to drive a truck on a public highway while drunk. Code, section 4722a.

In reaching the conclusion that Albert was drunk, the jury had before them the evidence of E. B. Hedrick, a sergeant on the State Police Force, who said that this defendant, after having been cautioned that his statements might be used against him, said that if he struck anybody he was so drunk that he did not know it. Some one called up the owner of the truck as Albert was about to start on his last trip and told him that Albert was so drunk that he should be taken out of control. Another witness identified himself as being the one who had called up the owner and corroborated his statement. Another witness, a deputy sheriff for Giles county, arrested Albert about a half hour after the accident and said that he was then drunk.

This evidence is amply sufficient to warrant the jury in believing that he was drunk on this occasion.

The defendant's own account of what happened does not help him but shows that he killed Mrs. Johnson in the unlawful performance of a lawful act.

He testified that he was not drunk but that the brakes to his truck were broken and would not work; that coming down to the east end of the bridge the road was downgrade, and that because of this grade his truck got out of

control. If this be true, there was no occasion for him to turn into the bridge at all, for his road led straight ahead.

Let us assume that his turning into the bridge was an error of judgment in a sudden emergency. As a matter of fact, the emergency was not sudden. Moreover, the grade fell away a hundred yards from the bridgehead.

When he turned into the bridge his speed, according to his estimate, was from 30 to 35 miles an hour; the Johnsons were 400 feet away; the bridge was 23 feet wide; there was no intervening traffic, and it was broad daylight. His steering gear was in working order. There was ample room for him to pass them in safety, yet he tells us that he never saw them. If he never saw them, he was grossly negligent, and if he saw them, he was grossly negligent. His truck scarred the righthand parapet of the bridge for 60 feet from where they were. The most that can be said for him if he was sober is that he was guilty of the unlawful performance of a lawful act.

Recklessness in itself may establish involuntary manslaughter. *Goodman* v. *Commonwealth*, 153 Va. 943, 151 S. E. 168. In that case it is said that proof of malice is not necessary and that negligence must be the proximate cause of the homicide.

That case and *Mundy* v. *Commonwealth*, *supra*, are cited with approval in *Bell* v. *Commonwealth*, 170 Va. 597, 195 S. E. 675. An instruction given there and affirmed in part reads: The killing must be "accompanied by such carelessness or recklessness on the part of the accused as is incompatible with a proper regard for human life."

Instruction No. 1 states the law as we have written it; the defendant's objection to it is without standing, and for another reason—he said that applied to this case it "is misleading and confusing." No attempt was made to tell the trial court wherein it could have misled or confused the jury and so our Rule 22 has been ignored.

Instruction No. 2 was given on behalf of the Commonwealth:

"The court instructs the jury that if you shall believe from the evidence, beyond a reasonable doubt that the defendant, Homer Albert, while he was under the influence of intoxicants, drove a truck upon the public highway or bridge, at the time and place of the accident mentioned in the evidence in this case, which struck and killed the deceased, and that such intoxication caused the said accident, then you shall find the defendant guilty of involuntary manslaughter as charged in the indictment in this case."

To it the defendant made these objections:

"The defendant also objected to Instruction No. 2, and assigned as his reason for said objection that it was a finding instruction, not taking in the view or defense of the accused; that it assumed as a fact that the accused was drunk, and also that the truck driven by the accused struck and killed the deceased; and, that it was otherwise incomplete, insufficient and misleading to the jury."

These objections are without merit. The instruction was neither incomplete, insufficient nor misleading. It is not mandatory and left upon the Commonwealth the burden of proving beyond a reasonable doubt that the defendant was under the influence of intoxicants and that such intoxicants were the proximate cause of the accident. It told the jury that if it believed that the guilt of the defendant had been established in the manner indicated, he is guilty. Code section 4722a. And in so doing it was plainly right.

The court also gave, at the instance of the Commonwealth, this instruction:

"The court instructs the jury that if you shall believe from the evidence beyond a reasonable doubt that at the time and place of the accident mentioned in the evidence in this case, that the defendant was recklessly, negligently, and carelessly driving a truck, and that such recklessness, negligence and carelessness was so gross and culpable as to indicate a callous disregard of human life and of the probable consequence of his act, and resulted in the death of the deceased, then you shall find the defendant guilty of involuntary manslaughter as charged in the indictment."

The defendant objected:

█ "The defendant objected to Instruction No. 3, and assigned as reason for his objection that it was a finding instruction, without taking into consideration the defense of the accused, and assumed the fact as proved, that the accused's truck struck and killed the deceased; and, that it was otherwise incomplete, insufficient and misleading to the jury."

█ Recklessness itself may establish involuntary manslaughter and when we add to it a carelessness so gross as to indicate a callous disregard of human life, liability is too plain for argument. When these facts have been established beyond a reasonable doubt and to the satisfaction of the jury, plainly there should be a verdict of guilty.

In the recent case of *Lawrence* v. *Commonwealth, ante,* page 582, 26 S. E. (2d) 54, decided June 14, 1943, we said:

 "There is nothing peculiar about the law of automobiles. Here, as in all criminal cases, proof of negligence must be clear. The general rule was applied in these cases: *State* v. *Fredlund, supra; Fay* v. *State,* 62 Okla. Cr. 350, 71 Pac. (2d) 768; *People* v. *Allen,* 368 Ill. 368, 14 N. E. (2d) 397, and *Flemming* v. *Commonwealth,* 284 Ky. 200, 144 S. W. (2d) 220.

█ "We have no intention of whittling away the responsibility of careless or reckless drivers. A list of our dead is eloquent in their denunciation as are the facts in this case."

This instruction, offered on behalf of the defendant, was refused:

"The court instructs the jury that before they can convict the defendant they must believe from the evidence beyond a reasonable doubt that the alleged killing was the result of some negligent act, or acts, of the defendant intentionally done, and the defendant can not be convicted if the death was occasioned by mechanical defect in said truck or mere inadvertence for which the defendant was not responsible."

█ If the negligent act was intentionally done, then we have a case of murder and not of involuntary homicide; cer-

tainly it was not involuntary if it was intentional. There is nothing to show mere inadvertence. The brakes were out of order but the steering gear was not. On a straightaway bridge, 23 feet wide, the Johnsons were in plain sight for 400 feet, and yet the defendant says that he never saw them. To designate such conduct as inadvertence is to give an extraordinary construction to ordinary words. This instruction is so plainly wrong that it does not merit discussion.

■ It may in passing, however, be said if Albert was drunk and if his drunkenness brought about Mrs. Johnson's death, he is still liable even though he was as careful as a drunk man could be expected to be.

■ J. A. Newton was a juror. It appears that when Hedrick took the stand as a witness he had a tablet of papers to which he referred, and Mr. Newton was heard to say to him afterwards and during the progress of the trial, "of course you have to take notes," etc. This casual intercourse with Hedrick, Sergeant of the State Police Force, took place during the progress of the trial. It was known to counsel for the accused, who made no report of the incident to the court.

This also is assigned as error:

"It came out in the evidence of the defendant, who was the last witness to testify, that Hedrick on the same occasion that he had called the defendant 'a damned liar', had told him that, 'Mr. Newton said that you had been called to the army, to go on the 8th day of August, and you know you killed that woman to keep from having to go to the army.' Neither Hedrick, Sheriff Johnston, nor Deputy Poole denied this statement of the witness; either Johnston or Poole was present when it was made. All these men were in the court room, heard the statement and none was called to deny it. Mr. Newton, doubtless, knew that it was true and they could not deny it. The circumstances raise strong inferences that Hedrick and Newton had talked about the case at the time it happened because Newton was Secretary-Treasurer of the hospital in which Mrs. Johnson died and Hedrick in his elaborate preparation doubtless took in the

hospital in making his memoranda. Newton was also Chairman of the Giles County Selective Service Board and Hedrick would naturally inquire as to the defendant's status in the Draft, and the Chairman would be the one to whom he would go."

Hedrick was the first witness introduced on behalf of the Commonwealth. Matters in this assignment relied upon by counsel for the accused were known to him when Hedrick was examined, and yet Hedrick was not questioned as to them at all. Moreover, all of this was known to counsel when Mr. Newton, the juror, was examined on his *voir dire*, and if any mention was made to him of the facts here relied upon, the record does not show it. Even if we were to conclude that inferences could be predicated upon these circumstances, they should have been brought out before Newton was accepted as a juror. These assignments of error came too late. Counsel was silent when he had a chance to speak.

As was said by the court in *Adams* v. *United States*, 317 U. S. 269, 281, 63 S. Ct. 236:

"It is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality."

We think the jury was well warranted in believing that the defendant was under the influence of intoxicants to an extent which made it dangerous for him to attempt to drive this truck and that this was the proximate cause of Mrs. Johnson's death.

The evidence amply supports the verdict. The judgment appealed from is plainly right and should be affirmed.

*Affirmed.*