## CIRCUIT COURT OF BOTETOURT COUNTY

Commonwealth of Virginia

v.

Deborah K. Jackson

February 13, 1985

By JUDGE DUNCAN M. BYRD, JR.

At the conclusion of the trial of the above styled matter, held on November 29, 1984, the Court, considering the totality of the evidence, ruled that it had a "reasonable doubt" as to guilt of the Defendant of the crime of involuntary manslaughter based upon the theory of an accidental killing which was the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life. However, the Court took under advisement the issues of whether or not the Commonwealth could still sustain a conviction upon the theory of an accidental killing which is the proximate result of an unlawful act, to wit: driving while under the influence of intoxicants and the Defendant's Motion to Acquit upon the theory of collateral estoppel as a result of the Defendant's having been acquitted by the District Court of reckless driving.

The Court will address the collateral estoppel issue first. The Defendant cites *Simon* v. *Commonwealth*, 220 Va. 412 (1979), as authority for her position. There the Court stated at page 417:

> We conclude that, under the weight of authority and the principles set forth in *Ashe*, the Commonwealth is barred from introducing evidence to prove an offense for which a defendant has been previously acquitted,

> even though the facts necessarily resolved in the acquittal are not dispositive of an element of the offense charged in the second trial. Nothing within *Ashe* indicates that it is limited to barring a second prosecution when both crimes involve elements necessarily resolved in the defendant's favor by a prior acquittal. *Ashe* instead seems to focus upon the relitigation of issues of ultimate fact. *See Ashe*, 397 U.S. at 442, 443. To hold otherwise would mean that an acquittal in a criminal case would no longer serve to clear a person's reputation concerning the issues decided in his favor. *United States v. Mespoulede*, 597 F.2d at 339, n. 9. The defendant could no longer be assured that he could be ultimately cleared of the offense of which he has been acquitted, *Wingate v. Wainwright*, 464 F.2d at 215. A contrary holding would also allow a prosecutor to engage in the practice expressly prohibited in *Ashe*: the prosecutor's treating "the first trial as not more than a dry run for the second prosecution" and "refin[ing] his presentation in light of the turn of events at the first trial." *Ashe*, 397 U.S. at 447. That the defendant may have to "run the gauntlet" again in any event does not attenuate a defendant's interest in avoiding the strain and expense of relitigating an issue already resolved. *Mespoulede*, 597 F.2d at 335, n. 10. "To put it bluntly, to refuse to allow the assertion of collateral estoppel in this case [where the issue sought to be excluded is not a *sine qua non* of conviction in the second trial] would simply be inequitable." *Id*. at 335,

However, in *Simon*, the Court also stated at 418:

> *In determining which issues have necessarily been decided by an acquittal in a prior trial, we must "examine the record of a prior proceeding*, taking into account the pleadings, evidence, charge, and other

> relevant matter, and conclude whether a rational [fact-finder] could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444. Collateral estoppel becomes applicable only when the prior acquittal necessarily resolved the issue now in litigation. *C. A. Jones* v. *Commonwealth*, 217 Va. 231, 233, 228 S.E.2d 127, 129 (1976). *The party seeking the protection of collateral estoppel has the burden of "proving that the precise issue or question he seeks to preclude was raised and determined in the first action." Clodfelter* v. *Commonwealth*, 218 Va. 98, 106, 235 S.E.2d 340, 345, *reversed on other grounds*, 218 Va. 619, 238 S.E.2d 820 (1977). (Emphasis added).

As the Commonwealth suggests, a careful review of the record leads to the conclusion that there is *no* evidence of proceedings of the District Court aside from the assertions of counsel. Therefore, unlike the Court in *Simon*, which had a full transcript of the evidence of the District Court trial, this Court cannot conclude which issues of fact have been foreclosed from consideration by the prior acquittal, assuming there was one.

For this reason, the Defendant's Motion for collateral estoppel and autrefois acquit should be overruled.

Turning to the next issue, the Commonwealth cites *Albert* v. *Commonwealth*, 181 Va. 894, 27 S.E.2d 177 (1943); *Beck* v. *Commonwealth*, 216 Va. 1, 216 S.E.2d 8 (1975); and *Simon* v. *Commonwealth*, 220 Va. 412, 258 S.E.2d 567 (1979), as authority for an involuntary manslaughter conviction based upon a violation of the driving while intoxicated statute. The Court disagrees. Historically involuntary manslaughter has been defined as "the killing of one accidentally, contrary to the intention of the parties, in the prosecution of some unlawful, but not felonious, act; or in the improper performance of a lawful act." *Beck* v. *Commonwealth*, 216 Va. 1 at p. 4 (1975). However, in *King* v. *Commonwealth*, 217 Va. 601 (1977), after an analysis of

several cases, involving involuntary manslaughter resulting from the operation of a motor vehicle, including *Beck* and *Albert*, *supra*, our Supreme Court stated:

> We conclude that involuntary manslaughter arising from the operation of a motor vehicle should be predicated solely upon criminal negligence proximately causing death. Accordingly, we define involuntary manslaughter in the operation of a motor vehicle as the accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life. *Id.*, p. 607.

This standard has subsequently been followed in *Mayo* v. *Commonwealth*, 218 Va. 644 at 647 (1977); *Jenkins* v. *Commonwealth*, 220 Va. 104 at 107 (1979); and *Simon* v. *Commonwealth*, 220 Va. 412 at 420 (1979). While admittedly not expressly overruling *Beck*, the clear inescapable conclusion to be drawn from the Court's opinion in *Simon* is that as to the operation of a motor vehicle, the first prong of the definition of involuntary manslaughter has been eliminated to wit: "the killing of one accidentally, contrary to the intention of the parties, in the prosecution of some unlawful but not felonious act," *Id.*, at 604. Consequently, in order to sustain a conviction of involuntary manslaughter resulting from the operation of a motor vehicle the Commonwealth must show "an accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life," *Id.*, at 607.

For the reasons stated herein, the Court is of the opinion that the indictment should be dismissed and the defendant discharged.