GEORGE WESLEY BAKER, ADMINISTRATOR, ETC.

V.

FRANK BURNLEY TAYLOR, JR.

Record No. 820708

Decided March 8, 1985, at Richmond

Present: All the Justices

*Gerald F. Daltan (Susan S. Williams; Scaife & Daltan,* on brief), for appellant.
*Russell H. Roberts (Roberts & Ashby,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

The question for decision in this wrongful death case is whether the trial court erred in excluding evidence of the defendant's consumption of alcohol prior to the motor vehicle accident in which the death occurred. Finding that the exclusion was error, we reverse.

The question arose during the jury trial of a wrongful death action brought by George Wesley Baker, Administrator of the Estate of George Wesley Baker, II, deceased (Baker), against Frank Burnley Taylor, Jr. (Taylor). The jury returned a verdict in favor of Taylor, and the trial court entered judgment on the verdict.

The accident occurred about 11:30 p.m. on August 8, 1980, as Taylor, Wesley Baker, another young man, and two young women were returning from a picnic on the Rappahannock River at Fredericksburg. Taylor was driving his father's pickup truck, and his passengers were riding in the truck bed. Taylor drove south from Fredericksburg on Route 3 and ultimately turned onto Route 637, a dirt road on which his family's farm was located. The accident

occurred three-tenths of a mile from Route 3 after Taylor had rounded a curve. The vehicle ran off the left side of the road, crossed a ditch, mounted an adjoining bank, and turned over. All the passengers were thrown from the truck. Wesley Baker was pronounced dead at the scene.

Taylor told the investigating state trooper that he traveled the dirt road "all the time" and that he usually drove through the curve at 30 m.p.h. On the night in question, Taylor stated, "[t]he girls had to be home between 11:00 and 11:30" and he was "in a hurry to get them there." He took the curve at 50 m.p.h., which was "too fast," Taylor said, and he "went sideways in the road."

Testifying below, Taylor admitted making the foregoing statement, but he told the jury he did not know what caused him to lose control of his vehicle. He also admitted saying in a pretrial deposition that he "fell asleep" at the time of the accident. He admitted further that "until the time [he] lost control and struck the bank, [he] had no noticeable problem with steering the vehicle." He produced an expert, however, who testified that a defect he found in the steering mechanism a year after the accident caused Taylor to lose control of his vehicle. In rebuttal, Baker produced an expert who testified that the accident caused the defect.

The evidence excluded by the trial court consisted of admissions by Taylor that he drank "four to five" 12-ounce bottles of beer and part of a glass of wine at the picnic. Also excluded was the testimony of Janice Gerst, one of the passengers in Taylor's vehicle.

Janice Gerst's testimony was proffered by way of a deposition in which she testified that en route to the picnic, the group stopped at a market and purchased two bottles of wine and two six-packs of beer in 12-ounce bottles. She testified further that she, Taylor, and a third member of the group left the picnic, went to "the nearest Seven-Eleven," and "[p]urchased two more six-packs of beer," this time in seven-ounce bottles. Janice stated also that the group remained at the picnic site for three hours and departed at 10:30 p.m.; at that time, "[a]pproximately a six-pack" of the seven-ounce beer was left.

Continuing, Janice said that on the return trip, Taylor asked for beer, and on each of four occasions, she gave him one of the seven-ounce bottles. Janice stated that Taylor stopped for gas some ten miles from Fredericksburg and a like distance from the accident site. After this stop, Janice said, Taylor proceeded along

Route 3 and was "swerving on the road and going off the [paved surface] to the right into the dirt on the right of the road." According to Janice, she and the other female passenger remonstrated with Taylor about his driving; when Janice told Taylor "[t]o be more careful in his driving," he replied, " 'I'm okay, I'm fine.' "

On appeal, Baker contends that the trial court erred in excluding the evidence concerning Taylor's consumption of alcohol. This evidence was admissible, Baker argues, as relevant to the question whether Taylor was negligent either because he violated the statute against driving while intoxicated or because his ability to operate his vehicle was impaired.

On the other hand, Taylor contends our decisions establish the rule that the mere odor of alcohol on the breath of an individual, unaccompanied by evidence of other circumstances, is insufficient to establish negligence. Here, Taylor says, because none of the witnesses testified he had the odor of alcohol on his breath, the trial court held that the mere consumption of alcohol, unaccompanied by evidence of other circumstances, is not sufficient to establish negligence. This is a logical extension of the "mere odor" rule, Taylor maintains, and is consistent with its rationale, *viz.,* that "even though . . . operating a vehicle while intoxicated or impaired by alcohol is clearly negligent, the evidence of such impairment must be clearly probative." Evidence which shows "only consumption of alcohol is not probative," Taylor concludes, "because the temperate use of alcohol does not necessarily lead to impairment."

Taylor is correct in saying our decisions establish the rule that the mere odor of alcohol on a person's breath is insufficient to establish either his intoxication, *Hemming* v. *Hutchinson,* 221 Va. 1143, 1146, 277 S.E.2d 230, 232-33 (1981), or his lack of control, *Hoffner* v. *Kreh,* 227 Va. 48, 51-52, 313 S.E.2d 656, 657-58 (1984). But this rule does not apply, for example, where evidence shows that the consumption of alcohol has affected the person's "manner, disposition, speech, muscular movement, general appearance or behavior." These factors are listed in a statutory definition of intoxication contained in Code § 4-2(14) and applied in some of our decisions. *Hemming,* 221 Va. at 1146, 277 S.E.2d at 232; *Hill* v. *Lee,* 209 Va. 569, 572, 166 S.E.2d 274, 276 (1969).

Neither does the "mere odor" rule apply where the quantity of alcohol consumed and the relative time of its consumption are suf-

ficient to raise an inference of intoxication. *Beck* v. *Commonwealth,* 216 Va. 1, 4, 216 S.E.2d 8, 10 (1975). Nor does the rule have application where, although the quantity of alcohol consumed may not be sufficient to cause a person's intoxication in a strict penal sense, it "may be sufficient to impair his capacity to perceive the dangers with the clarity, make the decisions with the prudence, and operate the vehicle with the skill and caution required by law." *Simon* v. *Commonwealth,* 220 Va. 412, 419-20, 258 S.E.2d 567, 572-73 (1979).

We believe that *Beck,* although a criminal case, is particularly instructive here. In that case, a prosecution for manslaughter-by-automobile, the accused consumed approximately seven beers in a period of less than five hours preceding the fatal accident, "a quantity and time interval," we said, "sufficient to raise an inference of intoxication." 216 Va. at 4, 216 S.E.2d at 10. Here, by Taylor's own admission, he consumed "four to five" bottles of beer and part of a glass of wine within a four-hour period preceding the accident, and, if Janice Gerst's testimony is believed, Taylor's consumption of beer totaled eight or nine bottles in that period.

Taylor argues, however, that Janice's testimony was "so incredible as to be unreliable." Taylor points out that when Janice was asked whether anyone drank any beer on the return trip from the picnic, she first said she gave Taylor one bottle of beer and later changed her story and said she gave him four bottles. Taylor says that according to her own testimony, Janice was "lying in the back of the pickup truck," and it would have been "a physical impossibility" for her to hand Taylor even one beer, let alone four. These discrepancies, however, do not render Janice's testimony incredible; they only affect its weight.

Taylor also says *Beck* is inapposite because the evidence there showed not only that the accused consumed a substantial quantity of alcohol but also that he was so unsteady on his feet he tripped, stumbled, and almost fell and had trouble closing his car door. Here, Taylor says, he was observed after the accident by the investigating state trooper and a doctor who lived near the accident scene and neither testified to any odor of alcohol or untoward conduct "tending to indicate impairment on the part of Taylor."

We did comment in *Beck* upon the unusual behavior of the accused, but we said his conduct merely "reinforced" the inference of intoxication raised by the quantity of alcohol he consumed in the interval before the accident. 216 Va. at 4, 216 S.E.2d at 10.

And it is true that in the present case, neither the state trooper nor the doctor testified he smelled an odor of alcohol on Taylor's breath or observed any unusual conduct on Taylor's part. But, then, neither witness was asked about an odor of alcohol and only a general question concerning Taylor's condition was put to the state trooper, who replied that Taylor was "upset."

The fact remains that the evidence in dispute showed that Taylor consumed about as much alcohol in about the same time as the accused in *Beck*. Hence, the evidence gave rise to an inference of intoxication on Taylor's part. Furthermore, Janice Gerst's testimony showed that, before the accident, Taylor was "swerving on the road and going off the [paved surface] to the right into the dirt on the right of the road." Janice's testimony also showed that she and the other female passenger remonstrated unsuccessfully with Taylor about his driving. Finally, there was Taylor's statement, made after the accident, which indicated that his loss of control may have been caused by his apparent obliviousness to the dangers he knew existed on the curving dirt road on which the accident occurred. Taylor's conduct in these respects tended to reinforce the inference of intoxication raised by the quantity of alcohol he consumed in the four-hour period preceding the accident.

We hold that the evidence concerning Taylor's consumption of alcohol on the night of the accident was admissible and sufficient to support jury instructions on either intoxication or lack of control induced by alcohol. For the error in excluding the evidence, we will reverse the judgment appealed from and remand the case for a new trial.

*Reversed and remanded.*