# Jerry E. Lawrence, et al.

## v.

# Gerald Snyder, t/a, etc.

Record No. 820739

Decided March 8, 1985, at Richmond

Present: All the Justices

*P. Donald Moses (Timberlake, Smith, Thomas & Moses, P.C.,* on brief), for appellant.
*Rodger L. Smith* for appellee.

COMPTON, J., delivered the opinion of the Court.

In this negligence case, we consider whether the evidence is sufficient to support a recovery by an occupier of premises who suffered damages as the result of water leaking from a frozen water line on property of adjoining landowners.

Appellee Gerald Snyder, trading as Luray Bowling Lanes, sued appellants Jerry E. Lawrence and Susan B. Lawrence for damages caused by an accumulation of water in property leased by the plaintiff and used for a bowling alley. The plaintiff alleged that defendants, owners of an office building adjacent to the plaintiff's premises in the Town of Luray, undertook to renovate their building and "did negligently install, maintain, hookup, and operate the water pipe lines" in the structure. The plaintiff claimed that in January of 1981, as a result of defendants' negligence, large amounts of water leaked from defendants' building and flowed into plaintiff's premises causing extensive property damage and loss of business income.

A jury awarded the plaintiff $17,000, the amount of the suit. The trial court confirmed the verdict in a February 1982 judgment order, from which defendants appeal.

The plaintiff offered the only evidence considered by the jury. Testimony of the defendants' sole witness, an expert, was stricken by the trial court.

The parties stipulated that "on or about" January 5 or 6, a water pipe in the basement of defendants' building froze; that the

pipe "broke" causing a "slit in the pipe;" and that water leaked from the pipe during the night of the 6th and the morning of the 7th, flooding both the basement of defendants' structure and the basement premises occupied by plaintiff.

A plumber, who lived near the scene of the accident and who had installed the plumbing above ground in the basement of the defendants' building during the summer of 1980, was called to repair the broken pipe following discovery of the damage on January 7. Upon arrival, he found "the water was off" and "a frozen pipe that [had] split." The pipe was made of one-half inch copper tubing and was not the "main water line." When asked whether there was any heat in defendants' basement upon arrival, the plumber responded, "I think they did have the stove going then." None of defendants' water pipes were insulated.

The plumber testified that temperature in the area was near zero at the time and that the pipes at his home had frozen. He stated that his uninsulated pipes did not burst, however, because they were "galvanized."

The plumber further testified that when he installed the pipes for the defendants during the summer, there was "no heat" in the basement and no insulation on the pipes. He stated he told the defendants that either the building should be heated or the pipes insulated before "real" cold weather arrived in order to avoid freezing of the water lines. The plumber indicated that he returned to the defendants' premises after the summer work and before the accident to connect the main line to the water meter. He could not recall the exact date of this work except that "it was getting pretty cold."

The Town Water Superintendent testified that, during the "last part of December," Town employees performed work on the water meter on defendants' premises and that the water supply was "cut off" at the time. The witness had no recollection or record of the fact that the Town thereafter either "cut" the water "on" or gave anyone permission to reactivate the water supply to the defendants' building. He testified that a Town ordinance prohibited any person from activating a water system without express authority from the Town. The witness further testified that 12,300 gallons of water "went through the [defendants'] meter" from an unspecified date in December until January 7.

Although one of the issues on appeal involves alleged excessiveness of the verdict, the dispositive question is whether the evidence

was sufficient to establish that defendants were guilty of negligence proximately causing plaintiff's damages. The evidence was insufficient.

The applicable legal principles are undisputed. Negligence cannot be presumed from the mere occurrence of damage. The burden is on the plaintiff to produce evidence of preponderating weight from which the trier of fact can find that the defendants were guilty of negligence which was a proximate cause of the event resulting in damage. The plaintiff must show how and why the incident happened. And if the cause of the event is left to conjecture, guess, or random judgment, the plaintiff cannot recover. *Town of West Point* v. *Evans*, 224 Va. 625, 627-28, 299 S.E.2d 349, 351 (1983); *Sneed* v. *Sneed*, 219 Va. 15, 17, 244 S.E.2d 754, 755 (1978). *See Cooper* v. *Whiting Oil Co.*, 226 Va. 491, 495, 311 S.E.2d 757, 760 (1984).

In order to support his contention that the evidence was sufficient to raise issues for the jury on negligence and proximate cause, the plaintiff, properly eschewing reliance on *res ipsa loquitur*, emphasizes a number of facts which, he says, establish "how" and "why" the damage occurred. For example, plaintiff points to evidence that uninsulated pipes were exposed above ground; that the pipes were made of copper which, according to plaintiff, is "less resistant to freezing" than galvanized metal; that the "pipes had not been heated"; that the defendants had actual notice of the cold weather and knew the pipes would freeze in such weather if not insulated or heated; and that the frozen condition of the pipes was not discovered on either January 5 or 6 while over 12,000 gallons of water flowed through defendants' system.

Without question, the evidence established "how" the damage occurred, when viewed in the light most favorable to the plaintiff. The loss resulted from freezing and subsequent breaking of one uninsulated water pipe located somewhere in defendants' basement. The evidence also established the defendants were on notice that, in order to insure against water lines becoming frozen in extremely cold weather, either the pipes should be insulated or heat supplied to the basement area. The evidence also showed lack of any inspection of the defendants' basement for a period of two days.

Nonetheless, the mere evidence that defendants knew the pipes would freeze unless proper precautions were taken, together with evidence that a pipe did, in fact, freeze causing damage, and that

the frozen condition was not discovered during a two-day period, is insufficient standing alone to show that defendants' negligence, if any, caused plaintiff's damage. In short, the plaintiff has failed to show "why" the accident happened.

The evidence established that a stove of some type was supplying heat to defendants' basement when the plumber arrived some time during the day damage was discovered. Obviously, lack of heat causes freezing. But the evidence fails to show whether the stove had been operating at full capacity during prior days, at diminished capacity, or not operating at all. Indeed, the record is silent on when the stove was placed in the basement. Also, the record fails to show whether freezing occurred because the stove malfunctioned. If so, was the malfunction caused by an act of commission or omission of the defendants? If the stove was powered by electricity, did the power fail? If so, was the power failure due to defendants' carelessness, or was it due to a general power loss in the area?

Moreover, the evidence fails to show that a more diligent inspection during January 5 or 6 would have prevented the incident or that an earlier discovery of the split pipe would have prevented the damage. Also, there was no showing of the location of the one pipe that froze, or the function of the particular line. It may have been positioned near an exterior, below-ground opening so that a reasonable amount of heat in one section of the basement, the dimensions of which are not shown by the evidence, would not have prevented the damage. Was the pipe capped or did it enable water to flow freely through the line?

In summary, the plaintiff alleged that defendants "did negligently install, maintain, hookup, and operate" the water lines. Clearly, there was no evidence of improper installation, hookup, or operation. As we have demonstrated, the evidence fails to support a legitimate inference of negligent maintenance and to explain why the pipe froze. Under this evidence, the precise conduct which caused the pipe to freeze and split is left to conjecture, guess, and random judgment. The evidence must show more than that the incident resulted from one of two causes, for one of which defendants are responsible and for the other of which they are not. *Sneed*, 219 Va. at 18, 244 S.E.2d at 755.

Accordingly, the trial court erred in failing to sustain motions made by the defendants to strike the plaintiff's evidence. The

judgment in favor of the plaintiff, therefore, will be reversed and final judgment will be entered in favor of the defendants.

*Reversed and final judgment.*