## Richmond

## C. NATHAN JETTON

v.

## COMMONWEALTH OF VIRGINIA

No. 0371-85

Decided August 5, 1986

COUNSEL

Frederick W. Payne and Francis McQ. Lawrence (St. John, Bowling, Payne and Lawrence, on brief), for appellant.

Johns H. McLees, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**BARROW, J.**— Manslaughter convictions arising out of the deaths of five passengers in a single vehicle accident are the subject of this appeal by C. Nathan Jetton, the driver of the vehicle. He questions whether evidence of his consumption of alcohol was admissible and whether all of the evidence presented was sufficient to convict him. We conclude that the evidence of his alcohol consumption was admissible and, when considered with the other evidence, was sufficient to convict him.

Evidence of the amount of alcohol consumed by Jetton as well as its effect on his speech and behavior was presented to the jury. After leaving work on the evening of the accident, Jetton returned home about 4:00 p.m. where he consumed three twelve-ounce beers. Jetton then picked up four friends, and they proceeded to the home of Brenda Evans, arriving there between 8:00 and 8:30 p.m. David Bodrey was also present at Evans' home. Everyone participated in a drinking game called "quarters." Jetton testified that he drank three or four five-ounce cups of beer over a period of thirty-five to forty minutes.

The entire group left Evans' home between 10:00 and 10:30 p.m., arriving at Vivian Vance's home at approximately 11:30 p.m. Jetton joined four of the others who had resumed their game of "quarters," and, according to his testimony, drank one five-ounce glass of beer.

The effects of the alcohol on Jetton's behavior were observed by several witnesses. A friend of Jetton's testified that Jetton's speech was "a little bit slurred" when she spoke to him on the telephone shortly after midnight. A paramedic who arrived at the scene of the accident testified that there was an odor of alcohol on Jetton's breath and that Jetton's speech was "slightly slurred." Teresa Barker, the only other survivor of the accident, testified that she could tell everybody in the cab of the truck had been drinking by "[j]ust the way they acted and some of the silly things they did."

█ Evidence of the consumption of alcohol is admissible where evidence shows that it has affected a person's "manner, disposition, speech, muscular movement, general appearance or behavior." Code § 4-2 (14); *Hemming* v. *Hutchinson*, 221 Va. 1143, 1146, 277 S.E.2d 230, 232 (1981) (quoting *Hill* v. *Lee*, 209 Va. 569, 571, 166 S.E.2d 274, 276 (1969)). It is also admissible "where the quantity of alcohol consumed and the relative time of its consumption are sufficient to raise an inference of intoxication." *Baker* v. *Taylor*, 229 Va. 66, 69-70, 326 S.E.2d 669, 671 (1985) (quoting *Beck* v. *Commonwealth*, 216 Va. 1, 4, 216 S.E.2d 8, 10 (1975)).

The effect of alcohol on Jetton's behavior and the quantity of alcohol he consumed during the evening were sufficient to raise an inference of intoxication. His slurred speech, the odor of alcohol on his breath, and his general conduct following the accident indicated the effects of alcohol consumption. Therefore, the evidence of his alcohol consumption was admissible.

In determining the sufficiency of the evidence, several factors, in addition to alcohol consumption, must be considered. These include evidence of the condition of Jetton's truck, its speed at the time of the accident, and its crowded cab.

The truck failed to pass inspection approximately one month prior to the accident. Its brakes were not working properly, the steering box was not in good condition and the odometer and

speedometer did not work. After the accident the brake pads on one wheel were completely worn away and on another were "negligible and not worth measuring." Based on this evidence, the jury could have found that Jetton continued to operate his vehicle despite knowledge of the vehicle's defects which interfered with his ability to maintain proper control of the vehicle. *See Kennedy* v. *Commonwealth*, 1 Va. App. 469, 473, 339 S.E.2d 905, 908 (1986).

Although the exact speed of the truck at the time of the accident is uncertain, there was evidence that it exceeded the posted speed limit and may have been too fast for the existing conditions. On the night of the accident, the weather was rainy and foggy. Jetton testified that he was driving 50 mph around a curve when his truck left the roadway and struck two trees, but his speedometer was not working on this date so that he could not positively state his speed. The state trooper testified that the posted speed limit on that stretch of the highway was 55 mph; however, an advisory speed limit sign of 50 mph was located just prior to the curve.

A highway traffic engineer testified that as Jetton's truck rounded the curve, it went off the road and onto the shoulder for a distance of several yards. The truck then reentered the roadway, and the defendant's speed at that point was estimated by the traffic engineer at approximately 57 mph. Immediately after the truck reentered the highway, it crossed over to the opposite shoulder of the road and struck the trees. From this evidence the jury could have reasonably inferred that the vehicle's speed, before it first left the highway, exceeded the speed limit and was too fast for existing conditions.

Furthermore, Jetton's truck was overcrowded. Although two of the seven persons who had been riding in the passenger cab of the truck moved to the rear bed of the truck when Jetton made a stop shortly before the accident, there were four passengers plus Jetton riding in the cab of the pickup truck at the time of the accident. Jetton testified that immediately prior to impact "somebody grabbed hold the steering wheel and had put their foot on my [right] foot," implying that the accident was the result of horseplay but also supporting the inference that overcrowding contributed to the accident.

■ The evidence that Jetton, after drinking enough beer to affect his behavior, knowingly drove an overcrowded, defective vehicle and attempted to negotiate a curve at a speed in excess of the posted speed limit during unfavorable weather conditions was a sufficient basis for the jury to conclude that Jetton's negligence was "so gross, wanton, and culpable as to show a reckless disregard of human life." *King* v. *Commonwealth*, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977). "The cumulative effect of a series of connected, or independent negligent acts" causing a death may be considered in determining if a defendant has exhibited a reckless disregard for human life. *Bell* v. *Commonwealth*, 170 Va. 597, 609, 195 S.E. 675, 680 (1938).

■ The defendant's reckless disregard for human life must be causally linked to the homicide to establish involuntary manslaughter. *King* v. *Commonwealth*, 217 Va. at 607, 331 S.E.2d at 317. The issue of "recklessness" is separate and distinct from "proximate cause." *Commonwealth* v. *Root*, 403 Pa. 571, 574-75, 170 A.2d 310, 311 (1961). Whether the defendant's conduct was a remote or proximate cause of the death is a question of fact to be resolved by the jury or the court trying the case without a jury. *Delawder* v. *Commonwealth*, 214 Va. 55, 58, 196 S.E.2d 913, 915 (1973).

Evidence of the cause of Jetton's accident presented a factual issue. Whether the effect of alcohol on Jetton's behavior, the overcrowding of his vehicle, the defective condition of his brakes, the speed of his vehicle, or all of these factors contributed to the accident was a question to be decided by the jury. It did so after being properly instructed, and its verdict should not be disturbed.

For these reasons the judgments of conviction are affirmed.

*Affirmed.*

Benton, J., concurred.

Keenan, J., concurring.

I agree that the manslaughter convictions must be affirmed; however, I reach this conclusion based on a different view of the evidence than that taken by the majority. I believe that the only evidence upon which these convictions can stand is the evidence regarding Jetton's consumption of alcohol and the effect that it

had on him. Because the majority also relies upon evidence regarding the speed of Jetton's truck, the number of persons in the vehicle, and the fact that it had failed inspection, I write separately.

The Virginia Supreme Court has held that "involuntary manslaughter arising from the operation of a motor vehicle should be predicated solely upon criminal negligence proximately causing death." *King* v. *Commonwealth*, 217 Va. 601, 607, 231 S.E.2d 309, 316 (1977). In such cases, involuntary manslaughter is defined as "the accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life." *Id.*

From this it is apparent that the Commonwealth must establish, beyond a reasonable doubt, both that the defendant was guilty of criminal negligence *and* that such negligence was the proximate cause of death. Failure to establish either of these elements must result in a verdict of not guilty. In the present case, I believe that the only evidence which attains that end is the evidence regarding Jetton's consumption of alcohol and its resulting effect on him. There was no evidence from which the jury could have concluded, without resort to speculation, that Jetton's continued driving of his truck after it had failed inspection was the proximate cause of the accident. Neither could the jury have properly concluded from the evidence that Jetton lost control of his vehicle as a result of excessive speed or the number of occupants in the vehicle.

Viewed in the light most favorable to the Commonwealth, the evidence established that Jetton had consumed approximately five and one-half twelve ounce beers over a nine hour period preceding the accident. While I do not believe that this amount consumed over the period of time in question gave rise to an inference of intoxication, it was nevertheless a relevant circumstance for the jury to consider in determining whether Jetton was guilty of criminal negligence. *Beck* v. *Commonwealth*, 216 Va. 1, 5, 216 S.E.2d 8, 10 (1975); *Simon* v. *Commonwealth*, 220 Va. 412, 420, 258 S.E.2d 567, 573 (1979).

Evidence was presented that approximately two hours before the accident Jetton's speech had been affected. Specifically, Bonnie Ryder, who was a friend of Jetton's and who had spoken with him by phone many times, testified that on this evening when she

talked to him around midnight: "He sounded different. He . . . I don't know. He was a little bit slurred, but nothing bad, just sounded different than before." While this testimony was hardly conclusive, I am unable to find that it was insufficient as a matter of law on which to base a conclusion that Jetton had been affected by the alcohol.

Finally, there was the testimony of a rescue squad worker who stated that he smelled a moderate amount of alcohol on Jetton's breath at the scene of the accident. It is well established that the mere odor of alcohol is insufficient to establish either intoxication or negligence. *Baker* v. *Taylor*, 229 Va. 66, 69, 326 S.E.2d 669, 671 (1985). However, it is equally well established that this rule does not apply where, as here, the odor of alcohol is combined with evidence that the defendant's manner, disposition, speech, muscular movement, general appearance or behavior have been affected. *Id.*

The jury was therefore justified in concluding that Jetton was driving his truck while under the influence of alcohol, although perhaps not legally intoxicated, and that this impaired his capacity "to perceive the dangers with the clarity, make decisions with the prudence, and operate the vehicle with the skill and caution required by law." *Simon*, 220 Va. at 419-20, 258 S.E.2d at 572-73. As stated in *King*: "[D]riving under the influence of intoxicants which proximately results in death constitutes involuntary manslaughter." 217 Va. at 606, 231 S.E.2d at 316 (citing *Beck* v. *Commonwealth*, 216 Va. 1, 216 S.E.2d 8 (1975); *Albert* v. *Commonwealth*, 181 Va. 894, 902, 27 S.E.2d 177, 180 (1943)).

Having concluded that Jetton was driving while impaired by alcohol, the jury could further have concluded that this was the proximate cause of the accident. Although Jetton believed that one of his passengers may have interfered with his driving, the jury was not bound to accept this. Without Jetton's explanation, the evidence showed that the truck went off the road at a curve which was clearly marked by a directional arrow and a 50 mph cautionary sign. Jetton testified that he was familiar with the road, having driven it nearly every day for the preceding seven years.

The mere happening of an accident does not explain the cause of the accident. *Bacon* v. *Commonwealth*, 220 Va. 766, 769, 263

S.E.2d 390, 392 (1980). However, in this case the evidence of impairment from alcohol when combined with the failure of Jetton to negotiate a well-marked curve he had driven many times raised a sufficient inference from which the jury could reasonably have concluded that the accident was either caused or exacerbated by Jetton's conduct. It is the element of impairment from alcohol which separates this case from *Bacon* and *Powers* v. *Commonwealth*, 211 Va. 386, 177 S.E.2d 628 (1970)(mere happening of an accident does not give rise to an inference of reckless driving).

The majority, however, not only relies upon this evidence, but also upon evidence that Jetton's truck had failed inspection and that it was going slightly in excess of the speed limit as it was sliding across the road. I do not believe that this evidence can be relied upon to sustain the convictions because neither of these factors was shown to have contributed towards causing the accident.

The evidence showed that Jetton's truck had failed inspection nearly a month prior to the accident. The mechanic who conducted the inspection testified that the front brake pads were worn out, though not completely. In addition, there was an unspecified problem with the steering. Jetton testified that this problem was a missing lug. An accident reconstruction team investigated the accident. Two members of this team testified. Neither stated that the brakes on Jetton's truck had failed, or that this or any other mechanical failure contributed to the accident.

Regarding the issue of speed, one of the accident experts testified that from various physical evidence gathered at the scene, he could estimate the speed of Jetton's truck to have been 57 mph *at the time it re-entered the road*, after having initially failed to negotiate the curve. The speed limit on this road is 55 mph, although at the curve there is an advisory 50 mph sign. The expert could not estimate the speed of the truck at the time it left the road, nor was there other evidence on this point. Given the fact that the curve where the truck initially went off the road is at the top of an incline and that there was no evidence of braking, it would be speculative to conclude that Jetton was traveling at excessive speed when he went off the road.

Proximate cause is as much an element of involuntary manslaughter as is criminal negligence. The Commonwealth must prove both elements beyond a reasonable doubt. The Supreme

Court has recently explained in a civil case that in establishing proximate cause the moving party "must show how and why the incident happened. And if the cause of the event is left to conjecture, guess, or random judgment, the plaintiff cannot recover." *Lawrence* v. *Snyder*, 229 Va. 139, 142, 326 S.E.2d 690, 692 (1985). If this is true in a civil case, it is no less so in a criminal case.

I believe that without a showing of how or why the truck's speed during its slide, its failure to pass inspection, or its number of occupants, contributed as a cause of the accident, these factors amount to nothing more than conjecture, guess or random judgment. However, I believe that the conviction must be affirmed because the evidence of alcohol consumption, combined with evidence that it affected Jetton's speech, was not insufficient as a matter of law to substantiate a finding that his operation of the vehicle constituted criminal negligence, proximately causing the death of five occupants of his vehicle.