898 F.2d 149
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, for the Use and Benefit of STEWART
& STEVENSON SERVICES, INCORPORATED, Plaintiff-Appellee,
v.
MCI CONSTRUCTORS, INCORPORATED; the Federal Insurance
Company, Defendants-Appellants.
UNITED STATES of America, for the Use and Benefit of STEWART
& STEVENSON SERVICES, INCORPORATED, Plaintiff-Appellant,
v.
MCI CONSTRUCTORS, INCORPORATED; the Federal Insurance
Company, Defendants-Appellees.
 Nos. 89-1452, 89-1458.
 United States Court of Appeals, Fourth Circuit.
 Argued: Jan. 8, 1990.
Decided: Feb. 26, 1990.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, District Court Judge. (88-1138-A)
 Thomas Bruce Newall, Watt, Tieder, Killian & Hoffar, McLean, Virginia, for appellants.
 Thomas M. Brownell, Shaw, Pittman, Potts & Trowbridge, McLean, Virginia, for appellee.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and J. FREDERICK MOTZ, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Stewart & Stevenson Services, Inc. ("SSSI") brought this action under the Miller Act, 40 U.S.C. Sec. 270b, against MCI Constructors, Inc. ("MCI") and Federal Insurance Company ("Federal"), seeking payment for labor and materials furnished pursuant to an agreement between SSSI and MCI. Following a bench trial, the district court entered judgment in favor of SSSI, and awarded SSSI damages in the amount of $132,807.29 plus interest. MCI and Federal now appeal that decision, contending that most of the costs incurred by SSSI were directly attributable to its own negligence. SSSI cross-appeals that part of the trial court's decision holding that SSSI was not entitled to recover complete payment from MCI for its work on operating and maintenance manuals in the absence of an express agreement between the parties authorizing such work. Because the decision of the court below is not clearly erroneous, it is hereby affirmed.
 
 I.
 
 2
 MCI was the prime contractor on a General Services Administration project to supply and install seven gas turbine generator sets ("Gen-Sets") as part of a back-up power system at the Central Intelligence Agency Headquarters facility in Langley, Virginia. Federal was MCI's surety for the project. MCI procured the required Gen-Sets from Williams & Lane Energy Systems Corporation ("Williams & Lane"). The Gen-Sets consisted of generators manufactured by Kato Generators, Inc., and turbines produced by the Allison Gas Turbine Division of the General Motors Corporation ("Allison"). Williams & Lane was also hired to start up the Gen-Sets after they had been received and installed at the project site by MCI. After the seven Gen-Sets had been delivered to the site and four of them started by Williams & Lane, the subcontractor abandoned its work and defaulted on its obligations to MCI. Consequently, on January 6, 1987, MCI entered into a time and materials agreement with SSSI (the "Contract"). Under the Contract, SSSI agreed to complete the start-up of the three remaining Gen-Sets, and MCI promised to reimburse SSSI for the actual costs of all labor and materials, based on specified rates, that were provided to MCI by SSSI. SSSI estimated that its expenses for the project would total approximately $70,000.
 
 
 3
 When SSSI technicians attempted to start up Gen-Set No. 7 in January of 1987, they observed that the turbine blades were rubbing heavily against the compressor housing. The Allison turbine assembly, or compressor unit, that was installed in Gen-Set No. 7 is also identified by its serial number, ASP-1099. Because ASP-1099 was new, it was still covered by the manufacturer's warranty. The warranty extended only to the cost of repairs, however, and did not cover the associated expenses of removing, transporting and reinstalling the turbine unit. After consulting with Allison and MCI, SSSI removed the defective turbine from Gen-Set No. 7, and shipped it to National Airmotive Corporation ("NAC") in Oakland, California, for repairs. NAC is one of only two authorized Allison warranty repair facilities in the United States. In March of 1987, NAC ostensibly repaired the turbine, tested the blade assembly for rubbing, determined that the compressor unit was fixed, and returned the unit to SSSI in Virginia. In June of 1987, SSSI reinstalled the turbine in Gen-Set No. 7, and attempted to start up the unit. Despite the work and tests performed by NAC, SSSI technicians still observed abnormal compressor rubbing on coastdown, which occurs when the Gen-Set has been running and fuel is cut off to the power unit. Thereafter, the turbine was again removed and sent to NAC. NAC tested the turbine upon receipt, could find no problems with the unit, and returned it to SSSI. SSSI, however, continued to observe excessive rubbing on coastdown following the reinstallation of the turbine in July of 1987. NAC sent its own technician to the job site in August of 1987. The NAC technician confirmed the existence of severe compressor rubbing, and ordered the turbine sent back to NAC for additional repairs. Because its representative ordered the repairs, NAC paid for the cost of transporting the turbine assembly to its facility in Oakland on this occasion. Despite the additional repairs by NAC, SSSI still experienced rubbing problems once the unit was returned to Virginia, and SSSI was forced to send the turbine back to NAC for a fourth and final time in September of 1987.
 
 
 4
 Perplexed by ASP-1099's persistent rubbing problems, NAC wrote SSSI on October 21, 1987, to inform SSSI that, henceforth, NAC would no longer repair the turbine without charge unless SSSI could prove that the rubbing was caused directly by NAC's workmanship. NAC had come to believe that something external to the compressor unit was probably causing the rubbing. Consequently, NAC suggested that SSSI install the problematic turbine assembly in another Gen-Set in order to determine whether NAC's supposition was correct. Before SSSI had the opportunity to install ASP-1099 in another Gen-Set, however, MCI informed SSSI that it would make no further payments to SSSI until the turbine problems were resolved. It should be noted that SSSI submitted a daily accounting of all materials and labor furnished and charged to MCI under the Contract. These "Daily Customer Acknowledgment" forms were completed and signed by the SSSI technicians performing the start-up work, and counter-signed and approved by an MCI representative, usually the project manager. The Contract provided that MCI would reimburse SSSI for its expenses on a bi-monthly basis.
 
 
 5
 After MCI notified SSSI of its decision to cease its payments, SSSI discontinued all work under the Contract, and MCI was forced to hire a third company, American Power Services ("American"), to reinstall ASP-1099. Following NAC's recommendation, American placed ASP-1099 in one of the other Gen-Sets, and installed the turbine assembly from that other Gen-Set into Gen-Set No. 7. Thereafter, both Gen-Sets were started up without difficulties and have operated properly. MCI paid American $17,640 for this work.
 
 
 6
 At the time SSSI ceased work for MCI, SSSI claimed that MCI owed it $142,777.99 for labor and materials provided under the Contract, and $25,000 for work in preparing operating and maintenance manuals (the "O & M manuals"). MCI refused to tender payment, and SSSI brought this action against MCI and Federal under the Miller Act, 40 U.S.C. Sec. 270b, seeking full recovery. MCI denied that it had authorized any work on the O & M manuals, and claimed substantial offsets for invalid charges, overcharges and costs which MCI attributed to SSSI's alleged negligence in starting up ASP-1099. In particular, MCI sought credit for all work performed by SSSI in removing and reinstalling the turbine assembly before and after its shipments to NAC, and reimbursement from SSSI for the costs of transporting ASP-1099 between the job site in Virginia and NAC's repair facility in California. The district court conducted a bench trial in this case on February 13-14, 1989. In its decision of March 30, 1989, the court awarded SSSI damages in the amount of $132,807.29 plus interest. This sum included $3,700.00 for SSSI's preliminary work on the O & M manuals, and an offset of $13,004.70 for invalid charges, overcharges and other billing errors admitted by SSSI. The court found that MCI had failed to prove that SSSI was negligent in starting up ASP-1099, and refused to offset any costs on that basis. The court also held that there was no express agreement between the parties concerning the O & M manuals, and that SSSI was not entitled to recover any expenses incurred in their preparation, other than the $3,700.00 which the court had awarded for its preliminary work. Including interest, the lower court entered judgment in favor of SSSI in the amount of $133,473.29. The parties agree that Virginia law governs all substantive aspects of this dispute.
 
 II.
 
 7
 Negligence is an issue of fact to be resolved by the trial court, whose determination in this matter must be sustained on appeal absent clear error as defined by Fed.R.Civ.P. 52(a). Bonds v. Mortensen & Lange, 717 F.2d 123, 125 (4th Cir.1983); Lane v. United States, 529 F.2d 175, 180 (4th Cir.1975); Famous Knitwear Corp. v. Drug Fair, Inc., 493 F.2d 251, 253 (4th Cir.1974). Under Virginia law, a plaintiff has the burden of proving negligence by a preponderance of the evidence. In Lawrence v. Snyder, 229 Va. 139, 326 S.E.2d 690, 692 (1985), the Virginia Supreme Court stated:
 
 
 8
 Negligence cannot be presumed from the mere occurence of damage. The burden is on the plaintiff to produce evidence of preponderating weight from which the trier of fact can find that the defendants were guilty of negligence which was a proximate cause of the event resulting in damage. The plaintiff must show how and why the incident happened. And if the cause of the event is left to conjecture, guess, or random judgment, the plaintiff cannot recover.
 
 
 9
 In the case at bar, MCI failed to present any evidence that SSSI was negligent in satisfying its obligations under the Contract. MCI's expert, David Ingalls ("Ingalls"), testified that some rubbing on coast-down is normally encountered in starting up a compressor unit, and that an accepted solution to this problem is to allow the compressor to run long enough to permit the turbine blade to "wear into" the case. Ingalls further stated that, had he supervised the start-up of Gen-Set No. 7, he would have run ASP-1099 longer than SSSI had permitted it to operate before sending it to NAC for repairs. Based on this testimony, MCI argued that SSSI negligently and prematurely sent the compressor unit to NAC for unnecessary repairs, and that SSSI could have avoided the costs that were incurred in removing, shipping and replacing the turbine assembly simply by allowing the turbine to "wear into" the compressor case. However, the evidence in the record does not support MCI's contentions.
 
 
 10
 Robert Groves ("Groves"), an SSSI technician with more than sixteen years of experience with gas turbines, testified that he followed all of the procedures outlined in Allison's installation design manual during the start-up of ASP-1099, including the steps for motoring-in the turbine, running it at various power levels for specified periods, and shutting-down the unit. Groves also stated that the rubbing noises which he heard during the start-up procedures were not normal. Larry Langdon, a turbine technician with Ogden-Allied Corporation, the contractor responsible for routine operation of the Gen-Sets, also testified that the rubbing sounds produced by ASP-1099 were abnormal. Moreover, SSSI sent the turbine unit to NAC for the first time only after consulting with Allison and MCI. The rubbing problem was later confirmed by NAC's technician, who visited the installation site and ordered the compressor unit returned for additional repairs. Finally, SSSI submitted daily customer reports to MCI documenting all of its work under the Contract. At no time prior to September of 1987 did MCI question or protest any of the measures which SSSI took in attempting to start up Gen-Set No. 7, or indicate to SSSI that it was performing its duties under the Contract improperly.
 
 
 11
 Based on the record, it appears that SSSI attempted to install and start up the compressor units in a professional, competent and conscientious manner. During this period, SSSI received and followed the instructions and advice of Allison, the manufacturer of ASP-1099, NAC, Allison's authorized warranty repair facility, and MCI, the prime contractor and purchaser of the compressor unit. It should also be noted that MCI opted to enter into a time and materials agreement rather than a fixed-cost contract, and cannot refuse payment merely because SSSI's actual costs significantly exceeded its estimated expenses. MCI assumed this very risk at the outset, and must now be held to its bargain.
 
 
 12
 MCI further argues that, if SSSI was not negligent in starting up Gen-Set No. 7, NAC was negligent in performing the warranty repair work on ASP-1099, and that SSSI was liable for NAC's negligence under the tort doctrine of respondeat superior. There is no merit to this argument. NAC performed the warranty repair work as the agent of Allison, whose obligations ran directly to MCI, the original purchaser of ASP-1099. SSSI served as the agent of MCI in seeking satisfaction under Allison's product warranty. At no time was there a principal-agency relationship between SSSI and NAC.
 
 III.
 
 13
 In conclusion, there is no evidence that SSSI acted negligently in this case. Accordingly, the decision below is not clearly erroneous and is hereby affirmed. Because SSSI seeks consideration of its cross-appeal only if we reverse the district court's holding on the issue of negligence, we do not review the district court's decision regarding SSSI's work on the O & M manuals. All things considered, the judgment below is
 
 
 14
 AFFIRMED.