## Richmond

HELEN D. JONES, ADMINISTRATRIX, ETC.

V.

FRED A. DOWNS AND JONES MILLING COMPANY

June 12, 1981.

Record No. 791139.

Present: Carrico, C.J., Cochran, Compton, Stephenson, JJ., and Harman, S.J.

*Augustus Anninos (Howell, Anninos, Daugherty & Brown,* on brief), for appellant.
*Donnell P. Davis (Richard A. Saunders; Furniss, Davis and Rashkind,* on brief), for appellee.

PER CURIAM.

In this wrongful death action, we consider whether the trial court erred in striking the plaintiff's evidence on the ground that the plaintiff's evidence presented no jury issue concerning the defendant's negligence.

The plaintiff's decedent, John Mark Jones, was killed at approximately 8:25 p.m. on September 30, 1977, when his car ran into the rear of a tractor-trailer truck owned by defendant Jones Milling Company and operated that night by defendant Fred A. Downs. The accident occurred in Chesapeake on Highway 13 near the intersection of that highway and Interstate 464. On this section of Highway 13, there are three lanes leading in a westerly direction. The extreme left-hand lane, which is 13 feet 6 inches wide, is reserved for vehicles turning left onto a ramp leading to Interstate 464. The remaining two lanes, together measuring 21 feet 9 inches in width, are reserved for westbound through traffic. At the time of the accident, the roadway was dry. Although the accident occurred at night, the area was artificially illuminated. The posted speed limit for this portion of Highway 13 is 50 miles per hour.

Downs, called as an adverse witness, testified that he pulled his trailer, which was 7 feet 11 inches wide, into the left-turn lane of Highway 13 with the intention of proceeding to Interstate 464. He

stopped his tractor-trailer in that lane after observing a red light for traffic turning left and pulled the cab of the tractor-trailer two or three feet past the solid line at the end of the turn lane. Because he had turned his cab to the left in anticipation of the turn, he could not see whether the rear of his trailer was in the left through lane. Although he estimated that the left side of his trailer was approximately a foot from the left side of the pavement, he also testified that he did not know whether Jones' vehicle had crossed into the left-turn lane prior to the collision.

Paul F. Sutton, one of the investigating police officers, testified that he found a 124-foot skid mark in the left through lane. Although he could not state for certain that the skid mark had been produced by Jones' vehicle, he concluded the skid mark "appeared to be fresh" and noted that it "came up near the rear left tire" of Jones' car.

Floyd Harrell, a driver who passed the accident scene immediately before the collision, testified he was traveling "right at the speed limit" in the right through lane immediately before the collision. He clarified his answer concerning his speed by noting that "I didn't look at my speedometer, but I normally drive right along the speed limit, close to it, one way or the other." At that time, he observed the tractor-trailer truck and noticed the trailer was stopped in a slight left-turn angle. Immediately before the collision, through his rearview mirror, he spotted Jones' automobile in the left through lane, "gaining pretty rapid" on his car. After the accident, he stopped his car, radioed for assistance and went to the scene of the collision.

There was no evidence suggesting that Downs' trailer lights were not operating prior to the collision. Downs testified he had checked his lights earlier that evening and determined they were operating properly. Harrell stated he saw the rear lights on both ends of the trailer immediately before the collision. Officer Sutton testified that during his examination of Downs' tractor-trailer, he found no mechanical defects.

Forty-five minutes after the collision, a police photographer arrived and took two photographs which were admitted into evidence. Jurors could reasonably view the photographs as suggesting that Jones' vehicle was entirely in the left through lane and that Downs' tractor-trailer was slightly protruding into the left through lane at the time the photographs were taken. The angle at which the pictures were taken and sawdust covering the white line divid-

ing the two lanes make it impossible to render a definite conclusion regarding the placement of the vehicles. Downs and Sutton testified these photographs were taken after the vehicles had been moved by a wrecker. Neither specified the exact distance either vehicle had been moved prior to the taking of the photographs. Harrell, the disinterested bystander, testified that the photographs fairly represented the positions of the vehicles as he saw them when he arrived at the accident scene, before either vehicle had been moved.

The rule trial courts should follow in considering motions to strike is well settled. "When the sufficiency of a plaintiff's evidence is challenged by a motion to strike, the trial court should resolve any reasonable doubt as to the sufficiency of the evidence in plaintiff's favor. . . ." *Williams* v. *Vaughan,* 214 Va. 307, 309, 199 S.E.2d 515, 517 (1973). *Accord, Trail* v. *White,* 221 Va. 932, 935, 275 S.E.2d 617, 620 (1981). Applying this standard, we believe the trial court erred in granting the defendant's motion to strike. The trial judge, in ruling on the motion to strike, was obliged to "adopt those inferences most favorable to the party whose evidence is challenged, even though he may believe different inferences are more probable." *Lane* v. *Scott,* 220 Va. 578, 582, 260 S.E.2d 238, 240 (1979).

Here, the fact finder, after reviewing the testimony and the photographs, could reasonably conclude that Downs' trailer was protruding into the left through lane at the time of the collision. Officer Sutton, although not certain that the tire marks in the left through lane came from Jones' vehicle, testified that the marks "appeared fresh" and that they "came up near" the left rear wheel of Jones' car. From this testimony, jurors could infer that the tire marks were left by Jones' automobile. As noted earlier, jurors could interpret the photographs as indicating Downs' tractor-trailer extended into the left through lane. While the vehicles were apparently moved to some degree prior to the time the photographs were taken, Harrell testified that the photos accurately depicted what he saw upon his arrival at the accident scene, before the vehicles were moved. It was for the jury to determine whether the photographs indicated Downs' vehicle protruded into the left through lane and whether the photographs were accurate representations of the vehicles' location prior to their being moved.

Conceding *arguendo* that Downs' vehicle extended into the left through lane, the appellees argue that Jones was guilty of contrib-

utory negligence in "exceeding the speed limit," and that his negligence was a proximate cause of the accident. In particular, the appellees rely upon Harrell's testimony that Jones' vehicle was "gaining pretty rapid" on his car even though he was driving "right at the speed limit." While Harrell's testimony may be sufficient to sustain a jury finding that Jones was speeding, certainly his testimony does not compel such a conclusion as a matter of law. We think the issues of contributory negligence and proximate cause were likewise jury questions.

For the reasons stated, the judgment of the trial court is reversed and the case remanded for a new trial on all issues.

*Reversed and remanded.*