## Richmond

B. DENNIS COSTNER, ET AL.

v.

CHESTER LEE LACKEY, ET AL.

April 30, 1982.

Record No. 791415.

Present: All the Justices.

*Tommy Joe Williams (King, Fulghum, Renick, Bounds & Smith,* on brief), for appellants.

*Harry F. Hambrick, Jr. (Charles L. Williams, Jr.; Gentry, Locke, Rakes & Moore,* on brief), for appellees.

PER CURIAM.

B. Dennis Costner and Rebecca Costner, his wife, filed their petition in the trial court seeking to attach the real and personal property of Chester Lee Lackey and Suzanne Lackey, his wife. The petition, filed March 21, 1979, alleged that the Costners had conveyed to the Lackeys title to a house and lot in consideration of the assumption by the purchasers of an obligation secured by a deed of trust on the real estate and payment by the Lackeys of the additional sum of $8,987.98; that the Costners also had sold furniture to the Lackeys for which the Lackeys owed them the sum of $9,450; that the principal amount payable under the two obligations, therefore, was $18,437.98; and that the Lackeys were about to leave Virginia with their personal property with the intent to

change their domicile. The petition alleged that the obligation of $8,987.98 was "witnessed" by an unsigned note attached as an exhibit.

The trial court sat without a jury. At the conclusion of the presentation of evidence on behalf of the Costners, the court granted the Lackeys' motion to strike the evidence and dismissed the petition for attachment. On appeal, the Costners challenge this action of the trial court.

At trial, Dennis Costner testified that in the summer of 1978 Chester Lackey agreed to move to Roanoke to become a vice-president of Costner's corporation; that Lackey assumed the position of vice-president on September 1, 1978, and continued in that capacity until March 14, 1979; and that the corporation became bankrupt and ceased to operate on March 23, 1979. According to Costner, the Lackeys orally agreed in September, 1978, to purchase the Costners' residence, and in October the Costners and the Lackeys executed a written contract reciting the purchase price as $59,000, payable by assumption of an existing deed of trust obligation in the original principal amount of $51,100 and payment of the balance in cash at closing. Costner introduced into evidence the contract, which contained signatures purporting to be those of the Costners and the Lackeys. Costner said that he and his wife signed the document and though he did not see either of the Lackeys sign he recognized Lackey's signature.

Costner testified that he did not attend the closing of the sale on December 28, 1978 and did not know whether the Lackeys were asked at that time to give a note for the balance of $8,987.98.* The indebtedness was a mutual understanding "as far as [he] knew that there would be a note signed." Between September and December Lackey tried without success to obtain a second mortgage to pay the obligation. Costner then agreed to let him pay from his corporate earnings, which aggregated more than $40,000 during the period from September, 1978, to March, 1979, but Lackey made no payments on this indebtedness.

Costner said that his family moved from the residence on September 28 so that the Lackeys could move in. Mrs. Lackey and Mrs. Costner agreed on items of the Costners' furniture which the Lackeys wished to purchase and the two families orally agreed on

*The balance due at closing plus two additional monthly installments paid by Costner on the deed of trust obligation.

a purchase price of $9,950 but never reduced the agreement to writing. This obligation also was to have been paid from the proceeds of a second mortgage loan, but when the financing could not be obtained, Costner agreed that the Lackeys could pay over a period of six months. Costner testified that on February 1, 1979, Lackey gave him a check for $500 as a payment on account for the furniture, but made no further payments.

On cross-examination, Costner admitted that he signed a writing, introduced into evidence as Defendant's Exhibit A, that read as follows:

TO WHOM IT MAY CONCERN:

This is to certify that Mr. & Mrs. Chet Lackey have an amount held in escrow funds by me to cover all monies due me over and above the assumption of the existing mortgage of approximately $50,900.00.

s/DENNIS COSTNER
B. Dennis Costner

Costner explained that the writing was given to the holder of the secured obligation prior to sale of the residence to induce that creditor to consent to the assumption by the Lackeys of the indebtedness. Costner also asserted that at the time he signed the document he erroneously thought that the funds therein referred to had been placed in escrow with his attorneys.

Called as an adverse witness by plaintiffs, Lackey testified that he had placed in local storage, pending resolution of the attachment proceedings, the personal property upon which the attachment had been levied. He further testified that he moved his family to California on April 1, 1979. Although Lackey acknowledged that the signature on the contract of sale looked like his, he maintained that he did not remember signing the contract. He stated that he could not say "one way or the other" whether his wife's signature was on the document because, although they had been married three years, he had not "seen her sign that many documents."

In sustaining the motion to strike, the trial court noted that there were problems with the levy itself but ruled that the attachment depended upon the establishment of the underlying debt. The court found that the Costners failed to establish any debt because Costner admitted discharge of the indebtedness by signing

the acknowledgement. Stating "[t]here is no explanation presented to the Court other than the document which is an admission of the payment of the entire amount due," the court ruled that any obligation for the furniture as well as for the real estate was extinguished. In addition, the court said that the Costners were bound by the uncontradicted testimony of Lackey.

In considering a motion to strike the plaintiff's evidence, a trial court is required to resolve any reasonable doubt as to the sufficiency of the evidence in favor of the plaintiff. *Jones* v. *Downs,* 222 Va. 25, 28, 278 S.E.2d 799, 800 (1981). A motion to strike is in effect a motion for summary judgment which is not to be granted if any material fact is genuinely in dispute. *See R. F. & P. Railroad* v. *Sutton,* 218 Va. 636, 643, 238 S.E.2d 826, 830 (1977); Rule 3:18.

On appeal, it is also our duty to view the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff whose evidence was struck. *Warehouse* v. *Prudential Storage,* 208 Va. 784, 790, 161 S.E.2d 86, 90 (1968). Thus, in *Warehouse,* we held that the trial court in a bench trial erred in sustaining a motion to strike the plaintiff's evidence when the evidence, viewed in the light most favorable to the plaintiff, was not insufficient as a matter of law to support a recovery. To the same effect is *Williams* v. *Chesapeake Bay Bridge,* 208 Va. 714, 160 S.E.2d 573 (1968), where we also held that the trial court, sitting without a jury, erred in striking the plaintiff's evidence.

Applying these principles in the present case, we conclude that the trial court erred in striking the Costners' evidence. There were material facts in dispute when the court ruled that the evidence of the plaintiffs was insufficient as a matter of law. The court based its ruling on the acknowledgment of payment signed by Costner and the testimony of Lackey. Since Lackey's testimony relevant to the purchase was limited to his inability or unwillingness to identify signatures on the contract of sale for the real estate, the court must necessarily have relied solely upon the statement signed by Costner.

The meaning of that document was in conflict. Costner testified that it was signed because it was necessary to induce the secured creditor to permit the Lackeys to assume the deed of trust obligation and also because Costner thought that funds sufficient to discharge the balance of the purchase price for the residence had been placed in escrow. Moreover, the wording of the acknowledg-

ment of payment does not show conclusively that it was intended to apply to the furniture indebtedness. The language is susceptible to the reasonable interpretation that the document applies only to the purchase price for the real estate, and Costner's testimony supports such a construction. Costner's testimony is uncontradicted that the real estate transaction was closed on December 28 and that more than two months later Lackey paid $500 on account of the purchase price for the furniture, an act inconsistent with his contention that all obligations already had been extinguished.

In considering the motion to strike the plaintiffs' evidence, the trial court was not sitting as the fact finder but was ruling on a matter of law to determine whether the Costners had made out a prima facie case. In this posture, we hold that the case was not ripe for disposition on a motion to strike. Accordingly, we will reverse the judgment of the trial court and remand the case for a new trial.

*Reversed and remanded.*