# F. GLEN HARRELL

## V.

# TERRY D. WOODSON

Record No. 831922

March 6, 1987

Present: All the Justices

*Peter W. D. Wright (Conner, Hooker, Smith & Wright,* on brief), for appellant.

*E. Lewis Kincer, Jr. (Patrick J. Nooney; May, Miller and Nooney, P.C.,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

This automobile tort case presents the question whether punitive damages may be recovered in the absence of a specific claim for them in the motion for judgment. It also involves the question whether the trial court properly granted a motion *in limine* which had the effect of precluding evidence of the defendant's conduct during several hours before the accident occurred.

Because the case comes to us on appeal from an order striking the plaintiff's evidence, the evidence will be stated in the light most favorable to the plaintiff, adopting those inferences most favorable to his case. *Jones* v. *Downs*, 222 Va. 25, 28, 278 S.E.2d 799, 800 (1981); *Lane* v. *Scott*, 220 Va. 578, 582, 260 S.E.2d 238, 240, *cert. denied*, 446 U.S. 986 (1979). The plaintiff, F. Glen Harrell, and the defendant, Terry D. Woodson, were both 18-year-olds in October 1982 and were fellow employees at a grocery store in Hanover County. Woodson was driving his automobile on the evening of October 23, with two 16-year-old girls, one of whom was his sister, as passengers. They were "just riding around" with no particular destination. They obtained some beer and Woodson drank four cans between 8:15 and 9:00 p.m. They attempted, unsuccessfully, to enter a party at Virginia Commonwealth University where alcohol was served. After driving around Richmond and western Henrico County, they returned to Hanover County and went to the store that employed both Woodson and Harrell. Woodson asked Jeff Austin, another employee, if he knew where Harrell was that evening.

Woodson was particularly interested in learning whether Harrell was with Woodson's former girlfriend. When Austin left the store, Woodson followed him to a nearby nightclub. Woodson saw Harrell's car parked in the lot outside, and circled the nightclub a number of times, waiting for Harrell to emerge. After a time, Woodson left to take his sister home, then returned to the nightclub parking lot. About 12:30 a.m., Harrell came out with two male friends, entered his car, and drove away. Woodson drove out of the parking lot immediately ahead of Harrell and the two cars travelled side-by-side for a time. Both cars were proceeding west on Route 360, a four-lane highway, with Harrell in the right lane and Woodson in the left lane, at 50 to 55 miles per hour.

In the direction the cars were travelling, approaching the intersection of Meadow Drive, Route 360 widens to provide a "left

turn only" deceleration lane. Harrell, intending to turn left at Meadow Drive, slowed, displayed his left-turn signal, and moved into the lane behind Woodson in preparation for a further move into the "left turn only" lane. When Harrell was about four car lengths distant, directly behind Woodson, Woodson suddenly applied his brakes and came almost to a complete stop. Harrell succeeded in averting a collision with Woodson, but lost control of his car, swerved to the right and went off the road into a ditch. Harrell's car came to rest on its side, and Harrell was injured. Woodson did not stop, but continued west on Route 360.

Harrell's motion for judgment alleged that Woodson breached his duty to drive with reasonable care and with due regard for others using the road. It also alleged that Woodson acted "wantonly, carelessly, recklessly and negligently." It contained no claim for punitive damages.

At the beginning of a jury trial, Woodson moved the court, *in limine*, to exclude any evidence in support of punitive damages and particularly to exclude any evidence of Woodson's conduct and statements on the evening in question, including his consumption of alcohol, prior to the time the two cars met on Route 360. The court stated: "what happened immediately prior, during, and immediately after the accident is what is relevant here. . . . [W]e ought to start after both cars are on Route 360." The court granted the motion *in limine*, but permitted introduction of discovery depositions as a proffer of what the excluded evidence would have been.

Harrell presented evidence limited to the maneuverings of the two cars on Route 360, at the conclusion of which the court granted Woodson's motion to strike the plaintiff's evidence on the ground that the evidence showed that Harrell was either contributorially negligent as a matter of law, or that his negligence was the sole proximate cause of the accident. We granted Harrell an appeal.

■ We have not previously addressed the question whether punitive damages must be expressly claimed in pleadings under the present Rules of Court. Rule 1:4(d) provides that a pleading "shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense." Rule 3:16(b) provides that a bill of particulars may be stricken if it "fails to inform the opposite party fairly of the true nature of the claim or defense. . . ." We think a motion for judgment which fails to inform the defen-

dant that he will be faced by a claim for punitive damages at trial lacks the fairness, candor, and clarity required by these rules.

■ In *Wood* v. *Amer. Nat. Bank*, 100 Va. 306, 309-10, 40 S.E. 931, 932 (1902), we pointed out that under the common-law system of pleading then in use, damages which are the natural result of the act or default complained of are legally imported from the act or default and need not be specially pleaded, but such damages as do not necessarily flow from the act or omission complained of must be specially pleaded, if they are to be recovered. The basis for the distinction was the requirement that a defendant be put on notice of the nature of the demand he must meet at trial, where the mere recital of facts would not in itself accomplish that purpose. We stated in *Wood* that where a declaration alleges a state of facts which would, under the law, entitle the plaintiff to an award of punitive damages, such damages might be recovered "although not claimed *eo nomine* in the declaration." We acknowledged that "[t]he trend of the more recent decisions, however, has been in the direction of greater particularity of averment — a practice to be commended, as tending to prevent surprise, by fully informing a defendant of the charge which he is required to meet." *Id.* at 310, 40 S.E. at 932 (citations omitted).

■ The common-law system of pleading, for all its complexity, had the merit of permitting each party to require the other to state his claim or defense with great precision before the case matured for trial. The less formal system established by the present rules offers greatly enhanced opportunities for the discovery of an opponent's evidence, but much less opportunity to pin down the legal theories underlying his claim. It is therefore even more important under the present system to insure that each party be fairly informed of the "true nature of the claim or defense." As we said in *Ted Lansing Supply* v. *Royal Alum.*, 221 Va. 1139, 1141, 277 S.E.2d 228, 229 (1981):

> It is firmly established that no court can base its judgment or decree upon facts not alleged or upon a right which has not been pleaded and claimed. Pleadings are as essential as proof, and no relief should be granted that does not substantially accord with the case as made in the pleading.

(Citations omitted).

Accordingly, we hold that punitive damages may only be recovered where the plaintiff has made an express claim for them in the prayer for relief or *ad damnum* clause, sufficient to put the defendant on notice that an award of punitive damages is sought apart from, and in addition to, the compensatory damages claimed. Because no express claim for punitive damages was made in Harrell's motion for judgment, the trial court correctly ruled, *in limine*, that no such damages could be recovered and that evidence having the sole purpose of supporting such an award would, therefore, be excluded.

■ Some of the evidence excluded *in limine*, however, was relevant to the issue of liability. Harrell's allegation that Woodson had acted "wantonly, carelessly, recklessly and negligently" was broad enough to encompass his theory of the case: that Woodson, while not necessarily intending to cause him physical injury, nevertheless applied his brakes suddenly in an effort to frighten and disconcert him, with reckless indifference to the consequences. The excluded evidence would have furnished circumstantial proof from which the jury might have inferred that Woodson felt ill-will toward Harrell, that he devoted considerable time and effort to stalking him, and that he intended at least to trouble and harass him. Thus, the excluded evidence might have presented an entirely different picture to the jury than the simple negligence case which they heard.

■ Woodson's theory of the case was that he was surprised when Harrell's car "whipped" behind him, and that he applied his brakes because he was "startled." The excluded evidence would have had a strong tendency to refute Woodson's version. Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is relevant, and if otherwise admissible, should be admitted. *Va. Real Estate Comm. v. Bias*, 226 Va. 264, 270, 308 S.E.2d 123, 126 (1983). The court therefore erred in excluding, *in limine*, all evidence concerning Woodson's conduct and statements on the night in question before the two cars met on Route 360.

Harrell also assigns error to the court's exclusion of Woodson's admission that he had consumed four cans of beer between 8:15 and 9:00 p.m. while "riding around" in Richmond before the accident. Harrell contends that this was relevant as circumstantial evidence of wanton and reckless conduct. Woodson argues that there was no evidence that he was intoxicated or that his "manner, dis-

position, speech, muscular movement, general appearance or behavior" were affected, and that some such showing would be necessary as a foundation for the admission of evidence of the mere consumption of alcohol. *See* Code § 4-2(14); *Hemming* v. *Hutchinson*, 221 Va. 1143, 1146, 277 S.E.2d 230, 232-33 (1981); *Hill* v. *Lee*, 209 Va. 569, 572, 166 S.E.2d 274, 276 (1969).

 Subsequent to the trial of this case, we decided *Baker* v. *Taylor*, 229 Va. 66, 326 S.E.2d 669 (1985). There, we adopted the rule that the consumption of alcohol may be relevant to prove negligence "where the quantity of alcohol consumed and the relative time of its consumption are sufficient to raise an inference of intoxication." *Id.* at 69-70, 326 S.E.2d at 671 (citing *Beck* v. *Commonwealth*, 216 Va. 1, 4, 216 S.E.2d 8, 10 (1975)). We also, in *Baker*, quoted with approval from *Simon* v. *Commonwealth*, 220 Va. 412, 419-20, 258 S.E.2d 567, 572-73 (1979), an automobile manslaughter case, where we said: "The quantity of alcohol consumed by an automobile driver, even though not enough to cause legal intoxication, may be sufficient to impair his capacity to perceive the dangers with the clarity, make the decisions with the prudence, and operate the vehicle with the skill and caution required by law." *Baker*, 229 Va. at 70, 326 S.E.2d at 671. In *Baker*, we held that an inference of intoxication might be drawn from the consumption of "four to five" bottles of beer and a part of a glass of wine within a four-hour period preceding the accident, and that such an inference rendered the evidence of consumption relevant and admissible on the issue of negligence. In *Beck*, we held the consumption of seven beers in a five-hour period sufficient to raise an inference of intoxication or impaired capacity.

 Here, applying the same standard, we hold that the consumption of four cans of beer within a 45-minute period, which ended three and one-half hours before the accident, is sufficient evidence to raise a similar inference of intoxication or impaired capacity, which the jury might draw or reject. On remand, therefore, the evidence should be admitted.

For the reasons stated, the judgment will be reversed and the case remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*