# CIRCUIT COURT OF THE CITY OF NORFOLK

William T. Firesheets

   v.

Norfolk and Western Ry. Co.
and Norfolk Southern Ry. Co.

Case No. (Law) L98-1074

BY JUDGE MARC JACOBSON

January 14, 2000

William T. Firesheets was employed by Norfolk and Western Railway Company and Norfolk Southern Railway Company as a conductor and alleges that he was injured during the course of his duties when a "ratchet" or "lever" style handbrake failed to properly operate. In his Motion for Judgment, Plaintiff alleges Defendants violated certain statutes thereby proximately causing or resulting in the injuries allegedly sustained by Plaintiff. Specifically, Plaintiff alleges Defendants negligently and unlawfully provided a handbrake which was operating in an unsafe and improper manner and that Defendants knew or should have known that the type of handbrake in question was unsafe. See Plaintiff's Motion for Judgment (hereinafter Pl.'s Mot. for Jud.), ¶¶ 8-11.

During the course of discovery, Plaintiff propounded Request for Production of Documents Number 45 to Defendants, requesting copies of all "studies, reports, safety studies, safety committee minutes or reports, FRA studies or similar studies relating to the use of the type of handbrake in question." On November 18, 1999, a hearing was held concerning Defendants' objection to Request for Production 45. However, in the interest of full disclosure, Defendants submitted to this Court two sets of documents for *in camera* review and determination of whether the documents are responsive to Request for Production 45 and discoverable. See documents

attached as Exhibits A and B. Defendants contend that the attached documents are neither relevant to this case nor responsive to Request for Production 45.

Discovery is governed by the Rules of the Virginia Supreme Court. Rule 4:1 provides that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ." Virginia Supreme Court Rule 4:1(b)(1). The Rules further state that it is not grounds for objection "that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, discovery of matter otherwise within the scope of the Rules of Court may be precluded to prevent annoyance, embarrassment, oppression, or undue burden or expense. Virginia Supreme Court Rule 4:1(c).

A matter is relevant if it has any probative value or logical tendency, however slight, to prove a fact at issue in the case. See Charles E. Friend, *The Law of Evidence in Virginia* 447 (4th ed. 1993); see also *Byrd v. Commonwealth*, 30 Va. App. 371, 517 S.E.2d 243 (1999); *Jenkins v. Winchester Department of Social Services*, 12 Va. App. 1178, 409 S.E.2d 16 (1991); and *Harrell v. Woodson*, 233 Va. 117, 353 S.E.2d 770 (1987). "The criterion of relevancy is whether or not the evidence tends to cast any light upon the subject of the inquiry." Friend, *supra*, at 447.

The documents attached as Exhibit A relate to safety concerns surrounding the operation of ratchet-type handbrakes on certain locomotives. Defendants contend that because the documents contained in Exhibit A relate to ratchet-type handbrakes on locomotives as opposed to ratchet-type handbrakes on railcars, such documents are irrelevant to Plaintiff's claim. In his November 30, 1999, letter to the Court, counsel for Defendants stated:

> ratchet-style handbrakes on locomotives are operated in a different manner than ratchet-style handbrakes on railcars. On a locomotive, the employee typically stands on a platform to operate the handbrake and operates the handbrake by pushing its handle forward and pulling it backward. On a railcar, an employee typically stands on the ground adjacent to the railcar and operates the handbrake by pushing its handle up and down. Thus, the location and operation of the ratchet-style handbrakes on locomotives varies from the location and operation of the handbrakes on railcars.
>
> For these reasons, documents relating to ratchet-style handbrakes on locomotives are irrelevant to Plaintiff's claim that he was injured by a ratchet-style handbrake on a railcar.

See November 30, 1999, Letter to Judge Marc Jacobson from Kevin W. Mottley (hereinafter Nov. 30 Letter). Counsel for Defendants also brings to the Court's attention a February 11, 1999, Ruling by Judge Leafe of this Court during a hearing on Plaintiff's Motion to Compel the disclosure of "complaints" regarding ratchet-style handbrakes. At the hearing, Judge Leafe found Plaintiff's request for information regarding any safety "complaints" concerning ratchet-style handbrakes "too broad" and narrowed the relevant interrogatory to "chain slippage or cog slippage." See Transcript, 33-37, attached as Exhibit A to December 6, 1999, Letter to Judge Marc Jacobson from Kevin M. Mottley.

Defendants argue that the documents in Exhibit A do not constitute official "safety studies" or "reports" as requested by Plaintiff in Request for Production Number 45 and say that "the documents consist of internal memoranda that discuss safety issues. Thus, the documents do not appear to be within the scope of Request for Production Number 45." Nov. 30 Letter. In his Interrogatories and Requests for Production, as well as at the aforesaid November 18 hearing, Plaintiff has requested any "reports," "studies," or "complaints" in the possession of Defendants regarding safety issues related to the ratchet-style handbrakes. Defendants do not dispute the relevance of such material, but rather assert that the documents are not responsive to Plaintiff's repeated requests. While Plaintiff's requests did not explicitly include the terms "memoranda" or "documents," Plaintiff's written request and oral requests are sufficiently broad to cover the documents in Exhibit A. Judge Leafe has previously ruled that Defendants are required to produce any record of complaints received by Defendants regarding chain or cog slippage in ratchet-style handbrakes. At the February hearing, Judge Leafe clarified this point in the following exchange:

> Judge Leafe: . . . it's narrowed to the chain slippage or cog slippage type, and that is *record of complaints*. And I'm distinguishing that between, quote *complaints* so that we don't get ourselves in a situation where someone says I complained to so-and-so and get into a swearing contest.
>
> Mr. Mottley: These are written complaints then, Your Honor, or are they just . . . .
>
> Judge Leafe: They are *record of complaints*. So if it's received orally, if the railroad had a record of complaint, then either way.

See Transcript, 36. The documents in Exhibit A concern complaints received by Defendants regarding chain slippage or cog slippage in ratchet-style handbrakes. Therefore, the documents fall within the scope of Judge Leafe's ruling.

As the documents contained in Exhibit A do involve "chain slippage," the same might lead to the discovery of admissible evidence as contemplated by the appropriate Rule of Court. The Court, of course, is not ruling at this time that the documents are admissible as evidence.

After reviewing the documents attached as Exhibit B the Court concludes that same would not be subject to discovery by Plaintiff.

The Court sustains Plaintiff's Motion to Compel Discovery of the documents in Exhibit A and denies Plaintiff's Motion to Compel Discovery of the documents in Exhibit B.

January 28, 2000

Defendants Norfolk and Western Railway Company and Norfolk Southern Railway Company have moved this Court for entry of an Order compelling Plaintiff William Firesheets to submit to a vocational rehabilitation evaluation and a functional capacity evaluation pursuant to Rule 4:10 of the Virginia Rules of Court.

Rule 4:10 of the Virginia Rules of Court provides that "When the mental or physical condition . . . of a party . . . is in controversy, the court . . . upon motion of an adverse party may order the party to submit to a physical or mental examination by one or more *health care providers*, as provided in Virginia Code § 8.01-581.1 . . . ." (Emphasis added.) The Virginia Code defines "health care provider" as:

> a person . . . *licensed* by this Commonwealth to provide health care or professional services as a physician or hospital, dentist, pharmacist, registered nurse or licensed practical nurse, optometrist, podiatrist, chiropractor, physical therapist, physical therapy assistant, clinical psychologist, clinical social worker, *professional counselor*, licensed dental hygienist or health maintenance organization.

Va. Code § 8.01-581.1 (Michie 1992) (emphasis added).

Defendants seek to have the vocational rehabilitation evaluation of Plaintiff to be made by H. Gray Broughton and argue that Broughton is a "professional counselor" and that, because Code § 8.01-581.1 includes professional counselors within the definition of health care providers,

Broughton is authorized to perform a vocational rehabilitation evaluation of Plaintiff pursuant to Rule 4:10. Defense counsel further notes that "Mr. Broughton is a Certified Rehabilitation Provider, and the Board [of Licensed Professional Counselors, Marriage and Family Therapists, and Substance Abuse Treatment Professionals (Board)] recognized Broughton as a 'professional counselor' within the meaning of Code § 8.01-581.1." January 10, 2000, Letter to Judge Marc Jacobson from Kevin Mottley, 1.

Code § 54.1-3500 defines "professional counselor" as:

> a person trained in counseling interventions designed to facilitate an individual's achievement of human development goals and remediating mental, emotional, or behavioral disorders and associated distresses which interfere with mental health development.

Code § 54.1-3510 provides a separate definition of "Certified rehabilitation provider":

> "Certified rehabilitation provider" means a person who is certified by the Board as possessing the training, the skills and the experience as a rehabilitation provider to form an opinion by discerning and evaluating, thereby allowing for a sound and reasonable determination or recommendation as to the appropriate employment for a rehabilitation client and who may provide vocational rehabilitation services under subdivision A 3 of § 65.2-603 that involve the exercise of professional judgment.

Counsel for Plaintiff argues that Broughton is not a professional counselor as defined by Code § 54.1-3500 and that there is a distinction between the definitions of "professional counselor" and "certified rehabilitation provider." While professional counselors address a client's "human development goals" and health and development, certified rehabilitation providers focus on a client's employment and vocational rehabilitation needs. Thus counsel for Plaintiff, in essence, contends it would be more appropriate to characterize Broughton as a provider of vocational rehabilitation services rather than a provider of health care.

Plaintiff's counsel further contends that Broughton is merely "certified" by the Board to provide vocational rehabilitation services and is not "licensed" by the Commonwealth. No evidence has been presented that Broughton is "licensed" by any entity or subdivision of the Commonwealth nor that certification by the Board is the equivalent of licensure by the Commonwealth.

8

Accordingly, while certified rehabilitation providers and licensed professional counselors may be governed by the same regulatory body of the Commonwealth, it does not appear to the Court that Board certification is tantamount to or in fact the same as licensure by the Commonwealth as required under Code § 8.01-581.1. It is interesting to note that Code § 65.2-603 draws a distinction between certified rehabilitation providers and persons "licensed" by the Board.

The Court concludes that Broughton would fall without the definition of "health care provider" under § 8.01-581.1.

Plaintiff has raised no objection to the functional capacity evaluation to be performed by a physical therapist at Norfolk State University. Indeed, Code § 8.01-581.1 explicitly lists physical therapist within the definition of "health care provider." Plaintiff's sole objection lies with Defendant's motion to compel Plaintiff to submit to a vocational rehabilitation evaluation by Broughton, a certified rehabilitation provider.

The Court overrules the Defendants' Motion to Compel to the extent that Defendants seek to compel Plaintiff to undergo a vocational rehabilitation evaluation by Broughton.