COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, McClanahan and Senior Judge Coleman
Argued at Richmond, Virginia


ANTHONY STEVENSON, S/K/A
  ANTHONY J. STEVENSON
                                              MEMORANDUM OPINION[*] BY
v.        Record No. 2542-04-2               JUDGE SAM W. COLEMAN III
                                                   FEBRUARY 7, 2006
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        Beverly W. Snukals, Judge

            Robert H. Smallenberg for appellant.

            Leah A. Darron, Assistant Attorney General (Judith Williams
            Jagdmann, Attorney General, on brief), for appellee.


        Anthony J. Stevenson appeals his bench trial conviction of animate object sexual

penetration of Lori Pankey in violation of Code § 18.2-67.2(A).  Stevenson contends the trial

court erred by excluding evidence concerning Pankey's sexually suggestive conduct the evening

of the alleged assault and by excluding certain statements, also of a sexual nature, which she

purportedly made about Stevenson that evening.  Stevenson further contends the evidence was so

inherently incredible that it was insufficient to prove beyond a reasonable doubt the crime

charged.  As to the trial court's evidentiary rulings, because Stevenson did not proffer the

evidence that he claims was erroneously excluded, we cannot address the merits of that claim.

And, because the evidence, when viewed in the light most favorable to the Commonwealth, was

not inherently incredible and is sufficient to sustain the conviction, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I.

## BACKGROUND

At around midnight on November 21, 2003, Lori Pankey arrived at Richbrau, a bar in Richmond, Virginia, where she joined ten to fifteen of her fellow Northwest Airline employees in celebrating a co-worker's birthday. Among the people at the party was Anthony Stevenson, the appellant, an airline employee who had known Pankey through work for about two years. A number of people were dancing at the party, and Pankey testified that she danced in a large group that included Stevenson. She denied that she had any physical contact with Stevenson while the group was dancing.

At about 2:00 a.m. the party at Richbrau ended, and six co-workers, including Pankey and Stevenson, went to a room at the Omni Hotel to continue drinking and celebrating. The party in the hotel room was raucous, with a lot of "sitting around, joking, having a good time, laughing it up pretty good there." At some point during the party, Pankey claims Stevenson pulled her onto his lap as she was walking past him and that she "was prying his hands apart" as soon as she could. Pankey testified that she had two mixed drinks and a "shot" of liquor at Richbrau and one mixed drink at the Omni, which she did not finish, but she stated that she was not intoxicated while at the hotel.

Sometime between 3:30 and 4:00 a.m. the party at the Omni ended when a hotel employee came to their room and told them they were too loud and had to leave. After the party ended, Pankey used the bathroom in the lobby; when she returned to the lobby, she found that everyone had left except for Stevenson, who offered to walk Pankey to her car. After finding the car, which she said took about an hour, Stevenson suggested they go looking for a place to drink. While they drove around in Pankey's car looking for a bar, Stevenson began talking about

Pankey's husband, saying he thought her husband was "cheating" on her. Feeling uneasy about the situation, Pankey drove Stevenson back to his car and stopped to let him out.

Pankey testified that at this point Stevenson leaned over to try to kiss her, but she turned away. She said that Stevenson, who was then upset at being rejected, struck her. Shocked, Pankey pushed him away and told him to get out of the car. Pankey testified that Stevenson looked enraged; he put his hands between her legs and, despite her resistance, pushed aside her skirt and underwear and, with his finger, penetrated her vagina. Pankey reacted by striking Stevenson in the face, to which he responded by grabbing Pankey's shoulders, slamming her against the car seat and door, and saying, "You know I could hurt you, right?" Pankey then again asked Stevenson to exit the car, which he did.

Pankey drove to a friend's house, told him what had happened, and then called the police. The testimony of Pankey's friend as to her appearance and emotional state when she arrived at his house was consistent with her account of how emotionally upset she was from the events. A police officer arrived at the friend's house around 6:00 a.m. and questioned Pankey about the incident. The officer testified that when she arrived, Pankey was in a fetal position under a blanket, soothing herself with her hands. The officer noticed pressure marks on Pankey's upper thigh. As Pankey recounted the evening's events, the officer noted that Pankey appeared close to hyperventilating, and at times would cry.

In his defense, Stevenson testified that he and Pankey had flirted and kissed that evening and that, being a married woman, she had fabricated much of her testimony out of guilt. Stevenson presented the testimony of witnesses from the party who corroborated Stevenson's account of Pankey flirting with him throughout the night. Stevenson and another witness testified that Pankey engaged in "dirty dancing" with Stevenson at Richbrau. Two other witnesses stated that they did not see Stevenson grab Pankey at the Omni, as she claimed, but

instead observed her sitting on his lap for several minutes, laughing. These same witnesses further testified that they observed Pankey lift up her skirt and display her buttocks through the hotel window.

Stevenson denied that he penetrated Pankey's vagina with his finger. He stated that they drove around after leaving the hotel and that they kissed, talked, and held hands, but he denied the incident in which she claims he sexually assaulted her. He stated that she invited him to her house and that he declined. When they finally arrived at his car, he leaned over to French kiss her and she reacted by hitting him and telling him "we can't do this." He stated that he then exited her car. He contends that her version of what occurred—namely, that he forcibly placed his hand between her legs, pushed aside her underclothes, and inserted his finger in her vagina while they were both seated in her car—defies common sense and human experience and, thus, is inherently incredible.

II.

ANALYSIS

*EXCLUSION OF EVIDENCE:*

Stevenson contends the trial court abused its discretion by sustaining objections to questions intended to elicit evidence concerning (1) Pankey's sexually provocative conduct prior to the alleged assault and, (2) certain comments of a sexual nature Pankey allegedly made about Stevenson. The trial court ruled that the evidence which the questions sought to elicit was irrelevant in determining Stevenson's guilt or innocence and, thus, sustained the objections to the questions.

On this record, we do not know what evidence the questions would have elicited had the witness been permitted to answer. After the court sustained an objection to the questions, counsel did not then or at a later time proffer or vouch for what the evidence would have been or

- 4 -

how the witnesses would have answered.  Thus, we cannot determine whether the trial judge erroneously excluded relevant evidence.  Trial counsel twice asked witnesses about whether Pankey had made statements concerning Stevenson's "package," but the witnesses did not answer.

Also, as to Stevenson's claim that the trial court erroneously excluded other evidence of Pankey's sexually provocative conduct, again, no evidence was proffered as to how the witness would have answered those questions.  "'[W]hen testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer.'"  Rose v. Jaques, 268 Va. 137, 156, 597 S.E.2d 64, 75 (2004) (quoting Whittaker v. Commonwealth, 217 Va. 966, 969, 234 S.E.2d 79, 81 (1977)).  We cannot presume how the witnesses would have answered those questions.  It falls on the proponent of evidence to make a proffer of the expected answer, and we cannot consider evidence on appeal that was not properly proffered at the trial court.  See Claggett v. Commonwealth, 252 Va. 79, 95, 472 S.E.2d 263, 272 (1996).

Because Stevenson did not proffer the answers to the questions after the objections were sustained, we cannot find the trial court erred by excluding relevant evidence.

*SUFFICIENCY OF THE EVIDENCE:*

To convict a defendant of animate object sexual penetration, Code § 18.2-67.2(A) requires that the Commonwealth must prove beyond a reasonable doubt that the accused "penetrate[d] the labia majora or anus of a complaining witness . . . and . . . [t]he act [was] accomplished against the will of the complaining witness, by force, threat or intimidation."  Stevenson contends that the trial court erred in convicting him of animate object sexual penetration, asserting that the evidence was insufficient to support a conviction and that the complaining witness' testimony was inherently incredible in that it was contrary to human experience and was impeached by multiple witnesses.

- 5 -

On appeal, the standard of review "requires that we consider the evidence in the light most favorable to the Commonwealth, giving it all inferences fairly deducible therefrom." Sutphin v. Commonwealth, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985) (citing Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)). Conflicts in evidence are matters for the jury to resolve. See Burns v. Commonwealth, 261 Va. 307, 337, 541 S.E.2d 872, 892 (2001). On appeal, a court must therefore "'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (quoting Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954)). In addition, "the court's judgment must be affirmed unless it is plainly wrong or without evidence to support it." Davis v. Commonwealth, 230 Va. 201, 205-06, 335 S.E.2d 375, 378 (1985). "'[T]he trier of fact is the sole judge of the credibility of the witnesses, unless, as a matter of law, the testimony is inherently incredible.'" Winston v. Commonwealth, 268 Va. 564, 611, 604 S.E.2d 21, 48 (2004) (quoting Walker v. Commonwealth, 258 Va. 54, 70-71, 515 S.E.2d 565, 575 (1999)). We have repeatedly refused to affirm convictions "if the evidence is inherently incredible, or so contrary to human experience or to usual human behavior as to render it unworthy of belief." Willis & Bell v. Commonwealth, 218 Va. 560, 563, 238 S.E.2d 811, 813 (1977).

At trial, the Commonwealth presented Pankey's testimony that Stevenson penetrated her vagina with his finger. The testimony of the friend she went to for help after the incident, as well as that of the police officer who questioned her early that morning are both consistent with Pankey's version of the events. The officer noticed pressure marks on Pankey's upper thighs, her crying, rapid breathing and that she was lying in a fetal position. The trial court found

Pankey's testimony to be "extremely credible," and noted that "[h]er hysterical demeanor is inconsistent with what the defendant testified to as being a French kiss."

Stevenson claims, however, that Pankey's evidence was impeached by several witnesses who, in contradiction of her testimony, claimed to have seen her acting in a rowdy, profane manner and flirting heavily with him at the bar and hotel. Stevenson argues that it is contrary to human experience to believe that he, a middle-aged airline worker who knew Pankey through work for two years and had no relevant criminal past, would suddenly sexually assault her. Stevenson asserts that if Pankey were as uncomfortable around him as she claims, she would not have driven around with him in her car for at least an hour. He contends her testimony was contrived because she felt guilty and was worried about the repercussions of their flirting and kissing, and, thus, fabricated the story to protect herself.

The fact finder has the right to reject parts of the evidence as untrue and accept other parts as true. Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958). "The extent to which the contradictions and inconsistencies in [a witness'] testimony affected its weight, and [the witness'] purposes and motives, were questions for the [judge, sitting as fact finder,] to decide and we cannot properly disturb [the] verdict." Nationwide Mt. Ins. Co. v. Gentry, 202 Va. 338, 343, 117 S.E.2d 76, 80 (1960).

It is within the discretion of a fact finder to base its verdict on the testimony of a witness whose credibility has been impeached through attacks on his or her character or contradictory statements; the verdict will not be overturned as long as the witness' testimony, if true, is sufficient to support the verdict. Simpson v. Commonwealth, 199 Va. 549, 557, 100 S.E.2d 701, 707 (1957). However, a reviewing court is "not required to believe that which we know to be inherently incredible or contrary to human experience." Willis & Bell, 218 Va. at 564, 238 S.E.2d at 813. "To be incredible, evidence must be either so manifestly false that reasonable

men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." Burke v. Scott, 192 Va. 16, 23, 63 S.E.2d 740, 744 (1951).  Pankey's testimony that Stevenson reached over, forced his hand between her legs, and penetrated her vagina with his finger while they were both sitting in a parked car after having driven around downtown is not so unusual or contrary to human experience as to be incredible.  Moreover, the fact that Stevenson was middle-aged, had no relevant criminal past, knew Pankey for about two years, or that she may have been flirtations or sexually suggestive does not render her testimony inherently incredible.  Furthermore, nothing in Pankey's testimony concerning the events leading up to and including the vaginal penetration is so contrary to human experience or usual human behavior as to render it inherently incredible.

Therefore, the evidence is sufficient to support appellant's conviction of animate object sexual penetration.

Affirmed.

Benton, J., dissenting.

This conviction is supported solely by the trial judge's belief that Lori Pankey was more credible than Anthony Stevenson and other witnesses who observed Pankey's conduct. The trial judge ruled, however, that evidence which bore on Pankey's credibility was irrelevant. Because that ruling was erroneous and because Pankey's testimony appears to stretch credulity on some matters, I would hold that the error was reversible.

I.

The evidence proved Pankey left work and went to a bar at midnight to join fifteen of her co-workers at a birthday celebration. In the bar, Pankey danced with Stevenson as a part of a group; however, she denied "rubbing [her]self on him" or "dirty dancing" with him. When the bar closed at 2:00 a.m., she joined six of the people in a hotel guest room to continue the party.

Pankey denied sitting on Stevenson's lap in the hotel room. She explained that he grabbed her and pulled her onto his lap; but she pried his hands from her and moved away. She also denied hiking her skirt to expose her posterior. After an hour and a half, the hotel staff ordered the six people to leave the room because they were too boisterous and waited until they left. It was then 3:30 or 4:00 a.m. Pankey testified she had drunk "one shot and three [alcoholic] drinks" at the bar and in the hotel.

Leaving the hotel, Stevenson offered to walk Pankey to her car. Although she earlier parked her car on the street near the hotel, Pankey testified she could not locate her car. While she and Stevenson were looking for her car for an hour in a parking deck, she removed her boots (it was November 22) and "walked around in bare feet." Pankey testified that, when they found Pankey's car on the street where she had parked it, Stevenson suggested they go to "a strip club" near his car. She suggested, instead, that they find another bar where they could continue drinking. Although it was then after 3:30 a.m., Pankey drove her car several miles from the

downtown area to the west end of the city to find, according to Pankey's testimony, an open bar. With Stevenson as her passenger, she drove west on Broad Street looking for an open bar. She testified that she used to live on Staples Mill Road, which intersects West Broad Street, but she denied driving to show Stevenson where she lived and denied driving as far as Staples Mill Road. Her only explanation for driving so far was her testimony that she was looking for an open bar, almost two hours after bars are prohibited from selling alcohol in Virginia. See Code § 4.1-111; 3 VAC 5-50-30.

Not finding an open bar, she drove back to the downtown area to return Stevenson to his car. Pankey testified that Stevenson attempted to kiss her after they parked. She cursed him and rebuffed his attempt. She testified that Stevenson became enraged, "put his hands between [her] legs and . . . [put] his fingers . . . inside of [her]." Pankey testified she hit him in his face with her fists. Pankey testified that when Stevenson exited her car, she went to the nearby home of a male friend because her husband was away from town and her child was at the home of his sitter. Pankey declined to go to a hospital for an examination.

At trial, Stevenson's trial attorney sought to prove Pankey had an attraction to Stevenson that explained her presence in the car with him, to refute her testimony about her aversion to him, and to support Stevenson's version of the events that occurred in the car. Stevenson testified that he and Pankey "danced [in the bar], did dirty dancing and grinding." He also indicated that when they went to the hotel "everybody else [in the hotel room] was pretty much married or coupled off," that he and Pankey "were the only two that were quote unquote single," and that Pankey sat on his lap during the merrymaking.

Stevenson testified that although "it was pretty cool" that morning, Pankey removed her shoes when he went with Pankey to help her find her car. He did not know where she had parked and searched with her in a parking deck before finding the car on the street. Stevenson

testified that Pankey suggested they go to a club that she and her husband frequented. According to Stevenson, Pankey later "said [she did not] think it's a good idea [to] go to where [she] and [her] husband go . . . because his friends hang out there too." She then drove them to find another bar. Near Staples Mill Road she went onto a car lot to urinate. He testified Pankey then showed him where she used to live and then drove by her house. When she suggested they go in, he said he did not think it was a good idea. Pankey's co-worker testified that Pankey earlier had told Pankey's babysitter that she had to work both the night shift and the following morning shift so that Pankey's child spent the night at the babysitter's house.

Stevenson testified that, as they drove, talked, held hands, and kissed, his hand was on her thigh and her hand was on his hand. When they returned to his car, he "went to tongue kiss her" and she hit him, "said we can't do this" because they have to work together and her "husband will find out." He said she was talking very fast, and he was "baffled" about her demeanor. He then exited her car and drove away in his car.

Two of Pankey's co-workers, who were at the birthday celebration, were called to testify by Stevenson. Patty Larson directly contradicted Pankey's testimony about the dancing. Larson testified Pankey and Stevenson "were dirty dancing," and she described it as "body to body, grinding, dancing like front to front, back to front." Contrary to Pankey's testimony, Larson also testified that Pankey earlier told her that Pankey had sex with one of her husband's friends to make him jealous. Larson testified three other people were present when Pankey made that admission.

Carla Iddins, Pankey's co-worker whose birthday was being celebrated, testified that Pankey sat on Stevenson's lap in the hotel room for several minutes, not seconds. This contradicted Pankey's testimony that she was on Stevenson's lap momentarily after he pulled her and she broke away. She testified Pankey never yelled at Stevenson or appeared upset. She also

testified that Pankey "went over to the window and raised [her skirt] and turned her butt to the window," again contradicting Pankey who denied doing this.

Iddins's husband testified that when they arrived in the hotel room, Pankey "turned around and flipped her skirt up and put her butt to the window." He further testified that later Pankey was sitting on Stevenson's lap. He explained that everyone was "having fun, relaxing, talking and joking around. And [Stevenson] and [Pankey] were messing around, just funning with everybody else and there was some tickling going on and she ended up sitting on his lap."

## II.

During Pankey's testimony, she acknowledged that Stevenson had massaged her at work, but explained it was not significant because he had done so in front of other people. Stevenson's trial attorney then asked Pankey, "And have you also made comments in reference to [Stevenson], specifically about how big his package is?" The prosecutor made a relevance objection. On three occasions, when Stevenson's attorney began to give his explanation, the trial judge interrupted with comments. On the third occasion, when Stevenson's attorney argued that "if she's made sexual statements about [Stevenson], specifically in regards to sexual statements in front of other people about him --," the trial judge interrupted and ruled the evidence was irrelevant.

Later, during the trial, Stevenson's attorney sought to question Larson about "sexual remarks [Pankey had made] in regard to [Stevenson's] physique." After the trial judge sustained the prosecutor's objection, Stevenson's trial attorney responded, in part, as follows:

> Judge, she's made statements in regard to that specifically . . . .
> She's talking about specific sexual remarks she's made about
> [Stevenson] in regards to his physical characteristics. They're all
> sexually related.

A unilateral avowal of an attorney constitutes a proper proffer. Whittaker v. Commonwealth, 217 Va. 966, 969, 234 S.E.2d 79, 81 (1977). I agree with the majority opinion

- 12 -

that a more nuanced proffer would have been helpful; however, we should not "elevate form over substance" when determining the sufficiency of a proffer. Walls v. Commonwealth, 38 Va. App. 273, 279 n.1, 563 S.E.2d 384, 387 n.1 (2002). This record is sufficient to establish that the statements sought to be elicited were Pankey's remarks in the presence of her co-workers about Stevenson's genitalia. The statements made by Stevenson's attorney communicated the type of evidence the attorney sought to introduce. See Whittaker, 217 Va. at 967, 234 S.E.2d at 81. Indeed, the record establishes that the trial judge understood the nature of the question and the expected response but indicated that "even if they were having a torrid love affair" the evidence was irrelevant.

I would hold that this record was sufficient to establish that the rejected testimony would have established Pankey had made statements in the presence of her co-workers about Stevenson's genitalia. The evidence not only indicated Pankey's connection with Stevenson and attitude about him but also bore upon Pankey's credibility because she denied this was the case.

III.

"Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is relevant, and if otherwise admissible, should be admitted." Harrell v. Woodson, 233 Va. 117, 122, 353 S.E.2d 770, 773 (1987). See also Quinones v. Commonwealth, 35 Va. App. 634, 639, 547 S.E.2d 524, 527 (2001) (holding that "[e]vidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case"). Evidence offered to test a witness' credibility is "relevant to establish [a] victim's possible bias and motive to fabricate." Barker v. Commonwealth, 230 Va. 370, 376, 337 S.E.2d 729, 734 (1985). The rejected evidence was relevant because it tended to prove Stevenson's hypothesis that Pankey had expressed an interest, if not an attraction to him, and that her testimony at trial about her conduct that night, contradicted by Stevenson and other witnesses, was not credible.

- 13 -

Pankey testified at trial that Stevenson's advances were unwanted and that as a married woman, she would have not had a liaison with Stevenson. Assessing Pankey's testimony, the trial judge found that Pankey's testimony was "extremely credible" and that Pankey had no "reason to fabricate." This finding precisely demonstrates the reason that the error in excluding the evidence of Pankey's statements about Stevenson's "package" was harmful. The evidence the trial judge excluded tended to show Pankey had, indeed, expressed an interest in Stevenson in a sexual manner. The evidence also supported Stevenson's theory at trial that Pankey had a motive to fabricate her testimony.

Pankey's testimony directly contradicted the testimony of several witnesses. She disputed the testimony of two witnesses who said she was "dirty dancing" with Stevenson. She disputed the testimony of two witnesses who said she had lifted her skirt and exposed her posterior. She disputed the testimony of three witnesses who said she was playfully sitting on Stevenson's lap in the hotel room.

Pankey testified about the cause of the bruises on her thigh. She had declined, however, to be examined at the hospital. Thus, the Commonwealth provided no medical evidence about the bruises, described as "pressure marks," or when they occurred. Larson, who works with Pankey for an airline, testified that they constantly suffer bruises moving luggage and often are "all black and blue" from being hit by the luggage.

Pankey had been drinking alcohol at the bar and at the after-party in the hotel room. By Pankey's own testimony, however, she could not recall on the night these events occurred that she parked her car on the street when she went to the hotel. Consequently, she searched for the car for an hour in a parking lot with Stevenson while in her bare feet in late November. In addition, Pankey acknowledged she made the decision to drive from the downtown area, with Stevenson as her passenger, to look for an open bar at 3:30 a.m. Although she denied going to

- 14 -

the area of her residence, and the trial judge apparently believed her denial, her testimony that she was only looking for a bar open at that hour indicates a degree of intoxication or implausibility.

The excluded evidence tended to prove that, despite her professed disinterest in Stevenson and her testimony she "was not like that," Pankey had expressed a sexual interest in Stevenson. By her own description of her conduct that night, she was either intoxicated to a degree or in some way disoriented. The motive to fabricate obviously could be as simple as realizing that she, a married woman, was out on the town at 4:00 a.m. with another man, for whom she had expressed a sexual interest, after a night of drinking and partying, and without a coherent explanation for her behavior.

The trial judge's comment that even proof about a torrid love affair had no bearing on this case widely misses the mark. If that was true, or if the evidence proved Pankey had expressed an interest in Stevenson in a sexual manner, Pankey's credibility would suffer because she denied being "like that." Furthermore, it is not implausible that a motive to fabricate the events that occurred in the car arose from her inability to explain the late night hi-jinks and the early morning cruising in the car with Stevenson, a person whose "package" had drawn her interest.

For these reasons, I would hold that the trial judge committed reversible error when she excluded the evidence.